J-A08014-18

2018 PA Super 191

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM J. LYNN | : | |
| | : | |
| Appellant | : | No. 1300 EDA 2017 |

Appeal from the Order March 28, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003530-2011

BEFORE: PANELLA, J., LAZARUS, J., and STRASSBURGER[*], J.

OPINION BY PANELLA, J.                    **FILED JUNE 28, 2018**

This appeal arises from the grant of a new criminal trial by a panel of this Court. Monsignor William J. Lynn appeals from the order denying his motion to dismiss the charges and bar retrial on double jeopardy grounds.[1] Lynn argues after-discovered evidence of prosecutorial misconduct implicates the Double Jeopardy Clause in Article 1, § 10 of the Pennsylvania Constitution and prohibits the Commonwealth from retrying him. Because we conclude

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] While an order denying a motion to dismiss charges on double jeopardy grounds is technically interlocutory, it is appealable as of right as long as the trial court certifies the motion as non-frivolous. **See** Pa.R.Crim.P. 587(B)(6); **Commonwealth v. Barber**, 940 A.2d 369, 376 (Pa. Super. 2007) ("It is well settled in Pennsylvania that a defendant is entitled to an immediate interlocutory appeal as of right from an order denying a non-frivolous motion to dismiss on state or federal double jeopardy grounds.") The trial court found Lynn's motion non-frivolous. **See** N.T., Hearing, 3/24/17, at 5; Trial Court Order, 3/28/17. Thus, this appeal is properly before us.

Lynn has failed to demonstrate any of the alleged acts of misconduct were intended to deprive him of a fair trial, we affirm.

As our Supreme Court has provided a detailed description of the facts underlying this case in its prior opinion, **Commonwealth v. Lynn**, 114 A.3d 796, 798-808 (Pa. 2015) ("**Lynn II**"), we need not recite the entirety of this case's history. **See also Commonwealth v. Lynn**, 83 A.3d 434, 437-445 (Pa. Super. 2013) ("**Lynn I**"), rev'd **Lynn II** (providing summary of facts and procedural history).

Briefly, from 1992 until 2004, Lynn served as Secretary for Clergy for the Archdiocese of Philadelphia. As part of his duties as secretary, Lynn was responsible for receiving and investigating allegations of sexual abuse by priests within the Archdiocese, as well as suggesting placements for, and supervising, priests previously accused of abuse.

In early 2011, following a grand jury investigation into claims of sexual abuse by priests and concealment of this abuse by the Archdiocese, Lynn was arrested and charged with two counts of endangering the welfare of children ("EWOC"), 18 Pa.C.S.A. § 4304, and two counts of conspiracy to commit EWOC, 18 Pa.C.S.A. § 903. Lynn's charges arose from claims that he, in his capacity as secretary, negligently supervised two priests, Reverend Edward V.

Avery and Reverend James Brennan.[2] Due to previous complaints, Lynn knew that both Avery and Brennan had been accused of sexually abusing juvenile parishioners. Despite this knowledge, in 1993, Lynn recommended that Avery live in the rectory at nearby St. Jerome's Church—a church with a grade school attached. Several years after Avery was placed at St. Jerome's rectory, D.G., a student at St. Jerome's grade school, claimed he had been sexually abused by Avery.[3]

Lynn proceeded to trial on March 26, 2012, based in part upon D.G.'s allegations.[4] As part of the Commonwealth's case in chief, D.G. testified he first met Avery while participating in the bell crew or choir as a fifth grade student at St. Jerome's grade school. Shortly thereafter, D.G. recounted that Avery took the opportunity to molest him on two separate occasions following

---

[2] The Commonwealth charged one count each of EWOC and conspiracy to commit EWOC in relation to Lynn's supervision of Avery and Brennan, respectively.

[3] In his brief, counsel for Lynn do not refer to D.G. by his initials, but rather by his full name. D.G. was a minor at the time of the alleged sexual abuse. The use of his full name is prohibited by statute. **See** 42 Pa.C.S.A. § 5988(a) **Release of name prohibited**. We therefore order counsel to file within seven days of this decision a substituted brief redacting D.G.'s full name. Our Deputy Prothonotary has already sealed Lynn's filed brief.

[4] Initially, Lynn was scheduled to be tried along with co-defendants Avery and Brennan. However, prior to the commencement of trial, Avery pleaded guilty to one count of involuntary deviate sexual intercourse, 18 Pa.C.S.A. § 3123, and one count of conspiracy to commit EWOC. Brennan remained Lynn's co-defendant until the conclusion of the case.

early morning mass at St. Jerome's Church. D.G. claimed he was serving as an altar boy for the early morning mass, and was left alone with Avery after the conclusion of mass. Following this experience, D.G. testified he became withdrawn and began using drugs. This eventually culminated in D.G.'s development of a heroin addiction at the age of seventeen.

In addition to D.G.'s testimony, the Commonwealth utilized Detective Joseph Walsh to introduce "other-acts" evidence of the Archdiocese's handling of abuse allegations raised against twenty-one priests other than Avery and Brennan.[5] After two months of testimony, the jury convicted Lynn of one count of EWOC, relating to his supervision of Avery.[6] On July 24, 2012, the trial court sentenced Lynn to a term of three to six years' imprisonment.

_____

[5] In our review of the record, as well as previous decisions written in this case, we note that the exact number of priests accused of sexual abuse and admitted as other-acts evidence varies between twenty and twenty-one. **Compare Lynn I**, 83 A.3d at 446 (referencing twenty-one other priests), and **Commonwealth v. Lynn**, No. 2171 EDA 2012, at 13, 15, 2015 WL 9320082, at *6 (Pa. Super., filed 12/22/15) (unpublished memorandum) ("**Lynn III**") (discussing allegations leveled against twenty-one other priests), **with Lynn II**, 114 A.3d at 809 (stating trial court permitted Commonwealth to introduce evidence pertaining to twenty other priests). However, the trial court's initial order permitting the introduction of other-acts evidence clearly reveals it permitted the Commonwealth to introduce evidence relating to twenty-one other priests against Lynn. **See** Trial Court Order, 2/6/12. As such, we will utilize this number in our opinion.

[6] Following the conclusion of the Commonwealth's case, the trial court granted Lynn's motion for judgment of acquittal for the conspiracy count related to his supervision of Brennan. Thereafter, in reaching its verdict, the jury acquitted Lynn of the conspiracy count related to his supervision of Avery and the EWOC count related to his supervision of Brennan. The jury failed to reach a verdict on any of the charges against Brennan.

Following a series of appeals, a panel of this Court vacated the judgment of sentence and granted Lynn a new trial upon concluding the trial court abused its discretion by admitting a "high volume of unfairly prejudicial other-acts evidence." **Lynn III**, No. 2171 EDA 2012, at 1, 2015 WL 9320082, at *1. However, before the Commonwealth could retry Lynn, he filed a motion to dismiss his charges.

In his motion, Lynn claimed to have discovered the Commonwealth had asked Detective Walsh to investigate the veracity of D.G.'s grand jury testimony prior to Lynn's first jury trial. Lynn alleged the Commonwealth had committed prosecutorial misconduct by failing to inform him of this investigation, as well as the allegedly damning responses of D.G. and the Assistant District Attorney ("ADA") in charge of the case, Mariana Sorensen, when confronted with inconsistences in D.G.'s story. Lynn contends that permitting the Commonwealth to proceed with a retrial in the face of their intentional misconduct would violate his double jeopardy rights under Article 1, § 10 of the Pennsylvania Constitution.

In response, the Commonwealth conceded hiring Detective Walsh to investigate D.G.'s claims, but claimed any inconsistencies in D.G.'s testimony were provided to Lynn before trial. Further, the Commonwealth disputed Lynn's conclusion that D.G. had lied on the witness stand. As such, the Commonwealth alleged that no prosecutorial misconduct had occurred, as the

Commonwealth did not withhold any discoverable evidence from Lynn and therefore did not act with intent to cause prejudice to Lynn.

The trial court scheduled a series of hearings on the matter. At the hearings, Detective Walsh confirmed the Commonwealth hired him to investigate the accuracy of D.G.'s grand jury testimony. ***See*** N.T., Hearing, 1/13/17 at 8-9. After conducting interviews with members of D.G.'s family and staff at St. Jerome's grade school, Detective Walsh determined that certain details surrounding D.G.'s account of his abuse were inconsistent with information gathered through the interviews. ***See id.***, at 9-10. Specifically, Detective Walsh received information that appeared to counter D.G.'s claims that he served early morning mass in fifth grade, was a member of the bell crew in fifth grade, or ever participated in bell choir. ***See id.***, at 29, 31, 33-34, 36, 41, 58. During a trial preparation session in February 2012, Detective Walsh confronted D.G. about these inconsistencies, and claimed D.G. either failed to respond when challenged, or stated he was high when he made his initial statement to the police. ***See id.***, at 60-64.

Additionally, Detective Walsh testified he informed ADA Sorensen of these inconsistencies as he discovered them, but that she always confirmed her belief in D.G.'s story. ***See id.***, at 78-79. However, on one occasion in January 2012, before Detective Walsh's trial preparation session with D.G., Detective Walsh's report of inconsistencies was met with her telling him "you're killing my case." ***Id.***, at 79. Lynn asserts that these inconsistencies

and ADA Sorensen's response were proof that D.G.'s story of Avery's abuse was untrue, that ADA Sorensen was aware it was untrue, and as such, the prosecutor's actions in placing D.G. on the witness stand during trial constituted prosecutorial misconduct.

At the conclusion of the hearings, the trial court found that while the Commonwealth failed to provide Lynn with certain aspects of Detective Walsh's investigation, there was no evidence this failure constituted misconduct severe enough to warrant dismissal of Lynn's charges. **See** N.T., Hearing, 3/24/17, at 4-5. Instead, the trial court found the proper remedy in this case would be a new trial. **See id**., at 4. As Lynn had already been granted a new trial, albeit on different grounds, the trial court found no further relief was warranted. **See id**. This appeal followed.

On appeal, Lynn maintains the trial court erred in failing to dismiss his charges on double jeopardy grounds. He rests his argument on two bases. First, Lynn contends double jeopardy should attach due to the Commonwealth's intentional decision to withhold exculpatory information from him prior to trial. Second, he claims the Commonwealth deprived him of a fair trial by placing D.G. on the witness stand and suborning perjury.

> An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is de novo[.] To the extent that the factual findings of the trial court impact its

double jeopardy ruling, we apply a more deferential standard of review to those findings:

> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

***Commonwealth v. Graham***, 109 A.3d 733, 736 (Pa. Super. 2015) (citation omitted).

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution prohibit retrial where prosecutorial misconduct during trial provokes a criminal defendant into moving for a mistrial. ***See Oregon v. Kennedy***, 456 U.S. 667, 679 (1982); ***Commonwealth v. Simons***, 522 A.2d 537, 540 (Pa. 1987). However, Article 1, § 10 of the Pennsylvania Constitution offers broader protection than its federal counterpart in that

> the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

***Commonwealth v. Smith***, 615 A.2d 321, 325 (Pa. 1992). Pennsylvania has adopted a strict remedy for intentional prosecutorial misconduct:

> [U]nder Pennsylvania jurisprudence, it is the intentionality behind the Commonwealth's subversion of the court process, not the prejudice caused to the defendant, that is inadequately remedied

by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial.

*Commonwealth v. Kearns*, 70 A.3d 881, 884-885 (Pa. Super. 2013) (footnote and emphasis omitted).

Turning to Lynn's first claim, he asserts the Commonwealth intentionally committed a *Brady*[7] violation by failing to inform him of Detective Walsh's investigation, as well as D.G.'s and ADA Sorensen's responses thereto.[8] As the

_____

[7] *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*., at 87. The Court extended this rule in *Gigilio v. United States*, 405 U.S. 150 (1972), to require production pursuant to *Brady* of evidence bearing upon the credibility of a key prosecution witness.

[8] As the Commonwealth notes, Lynn appeared to waver on whether the Commonwealth's actions constituted a *Brady* violation during the evidentiary hearing. *See* Commonwealth's Brief, at 4-5, 11; N.T., Hearing, 1/13/17, at 42 (Lynn's attorney stating, "never have we said that we were denied Brady"), *but see* Appellant's Brief, at 14-15 (concluding the Commonwealth should be barred from retrial as they violated *Brady*). However, in his reply brief, Lynn clarifies that his counsel's statements during the evidentiary hearing regarding the lack of *Brady* violations was directed only at the written interview statements compiled by Detective Walsh, and not at the witness preparation session with D.G. or ADA Sorensen's comments. *See* Appellant's Reply Brief, at 1.

trial court concluded, this claim "is the gravamen of the **Brady** violation." Trial Court Rule 1925(a) Opinion, 8/1/17, at 4.[9]

A violation of **Brady**'s dictate*s* can require dismissal on double jeopardy grounds. **See**, **e.g.**, **Commonwealth v. Adams**, 177 A.3d 359, 372 (Pa. Super. 2017). However, as with other instances of prosecutorial misconduct sufficient to bar retrial, the defendant must show the prosecutor *intentionally* withheld this information in an attempt to deprive the defendant of a fair trial. **See Kearns**, 70 A.3d at 884-885. Discovery violations caused by "gross negligence" or "mere willfulness" are insufficient to invoke a defendant's double jeopardy protections. **See id**., at 886 (holding the trial court's conclusion that the prosecution did not intentionally withhold evidence, but was merely "grossly negligent" in failing to turn over the evidence, could not meet the requirements for barring retrial under the double jeopardy clause).

Here, the trial court found the Commonwealth should have provided the defense with information related to Detective Walsh's investigation. However, the court concluded Lynn was not entitled to invoke the protections of the

_____

[9] The Commonwealth appears to contest Lynn's claim that the trial court found a **Brady** violation, and instead asserts the trial court declined to rule on the issue as it was moot. **See** Commonwealth's Brief, at 9, 12. While we agree the trial court did not explicitly conclude the Commonwealth committed a **Brady** violation in its Rule 1925(a) opinion, it clearly found so in its initial ruling on Lynn's motion. **See** N.T., Hearing, 3/24/17, at 4 ("This [c]ourt does find that … certain information regarding Detective Walsh's investigation leading up to the trial should have been provided to the defense, the **Brady**-type remedy of a new trial would be the appropriate remedy.") Thus, this argument is meritless.

Double Jeopardy Clause as he failed to adduce evidence of intentional prosecutorial misconduct in withholding this information. ***See*** N.T., Hearing, 3/24/17, at 4-5; ***see also*** Trial Court Rule 1925(a) Opinion, 8/1/17, at 5. After reviewing the record, we agree with the trial court. We are unable to find a *single* instance during the multiple hearings held on the matter where Lynn produced evidence of the Commonwealth's intent in withholding this information.

In fact, in attempting to prove the ***Brady*** violation, Lynn adduced evidence that *defeats* his claim that the Commonwealth maliciously withheld this information. It is not clear that the prosecution was even *aware* of the content of Detective Walsh's witness preparation interview. ***See*** N.T., Hearing, 1/13/17, at 70 ("I don't know if I discussed the prep with her after the meeting, I'm not sure.") While this does not excuse the Commonwealth from performing their duties under ***Brady***, it certainly undermines the assertion that the Commonwealth intentionally withheld the content of the witness preparation interview. ***See Commonwealth v. Burke***, 781 A.2d 1136, 1142, 1145-1146 (Pa. 2001) (finding that miscommunication between the police and prosecutor alone, which leads to non-disclosure of information, cannot be the basis for deliberate misconduct); ***see also Adams***, 177 A.3d at 374 (affirming trial court's conclusion that dismissal would be overly harsh where trial court found no evidence of police or prosecution attempting to sabotage Appellant's case).

By failing to provide evidence of intent, Lynn has failed to establish the Commonwealth's **Brady** violation constituted intentional prosecutorial misconduct designed to deprive him of a fair trial.[10] **See Smith**, 615 A.2d at 325. Therefore, the proper remedy in this situation is not a complete bar to prosecution, but a retrial. This, as the trial court aptly notes, has already been awarded to Lynn. **See** Trial Court Rule 1925(a) Opinion, 8/1/17, at 5. Thus, Lynn is entitled to no further relief on this basis.

Next, Lynn argues retrial should be barred because the Commonwealth "intentionally and in bad faith ignored the truth and placed a witness on the stand who it alone knew would lie." Appellant's Brief, at 15. Lynn rests this argument on Detective Walsh's testimony that he disclosed the inconsistencies of D.G.'s testimony to the Commonwealth prior to the initial trial, and yet the Commonwealth still allowed D.G. to testify at trial. As such, Lynn asserts the Commonwealth's decision to place D.G. on the stand amounted to

---

[10] After reviewing the record, we agree with the Commonwealth that all of the inconsistencies inherent in D.G.'s witness preparation interview with Detective Walsh were disclosed to Lynn prior to trial. Therefore, while the trial court found that the failure to disclose the interview constituted a **Brady** violation, the only substantive information the Commonwealth failed to provide to Lynn prior to trial was the fact that Detective Walsh conducted this witness preparation interview.

prosecutorial misconduct sufficient to invoke double jeopardy and bar a new trial.[11]

Lynn has failed to prove his entitlement to relief. In support of his argument, Lynn compares the findings of Detective Walsh's investigation to D.G.'s grand jury and trial testimony, finds inconsistencies, and concludes such inconsistencies prove as a matter of law that D.G.'s testimony was false. However, inconsistencies in evidence, in and of themselves, do not equate to the introduction of false evidence. **See Commonwealth v. Ali**, 10 A.3d 282, 294 (Pa. 2010).

Importantly, the inconsistencies uncovered by Detective Walsh are not dispositive on the seminal issue: whether Avery molested D.G. after Lynn transferred Avery to D.G.'s church. D.G. has never wavered on his claim that the sexual abuse occurred and Detective Walsh did not find any direct evidence contradicting this aspect of his claim. Therefore, any of the inconsistencies Detective Walsh perceived through his investigation into D.G.'s testimony are solely for the jury to evaluate as to credibility. **See Commonwealth v. Davis**, 541 A.2d 315, 317 (Pa. 1988) ("As the

---

[11] The Commonwealth maintains Lynn waived this argument by failing to include it in his initial motion to dismiss. However, Lynn included this argument in his supplemental motion to dismiss and he advanced this argument before the trial court during the evidentiary hearing. **See** Supplemental Motion to Dismiss, 1/11/17; N.T., Hearing, 1/5/17, at 31-32. Thus, we decline to find waiver.

phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.")

Also, while Lynn focuses most of his attention on perceived discrepancies in D.G.'s testimony, the record does not support his serious allegation that the prosecution *knowingly* presented false evidence. While Detective Walsh claimed ADA Sorensen informed him that the inconsistencies he uncovered through his investigation were "killing [her] case," he also testified that ADA Sorensen *repeatedly* told him she believed D.G.'s testimony. The trial court found this evidence did not support a finding that ADA Sorensen knowingly presented false evidence. We will not disturb this determination. Thus, as Lynn once again fails to provide evidence of intentional conduct by the prosecution, Lynn's second argument in support of double jeopardy barring retrial, fails.

Alternatively, Lynn asks this Court to issue a writ of prohibition barring the admission of D.G.'s testimony in his retrial. In support of this request, he asserts the evidence outlined above leads to the "inescapable conclusion" that D.G. lied under oath, or, at the very least, that the Commonwealth placed him on the stand believing he would lie under oath. Appellant's Brief, at 20. And he argues the introduction of D.G.'s false testimony would violate his constitutional rights and that we should use our power to preempt this violation by issuing a writ of prohibition.

As discussed, Lynn failed to show the information uncovered by Detective Walsh's investigation rendered D.G.'s trial testimony perjurious. Therefore, his claim that he needs us to protect his constitutional rights from the introduction of D.G.'s false testimony fails. However, even assuming Lynn had proven D.G.'s testimony to be false, a writ of prohibition is the incorrect vehicle to obtain the relief requested.

> [T]he writ of prohibition under Pennsylvania law is an extraordinary remedy invoked to restrain courts and quasi-judicial bodies from usurping jurisdiction which they do not possess or exceeding the established limits in the exercise of their jurisdiction. The writ is not one of right but rather rests with the sound discretion of the appellate court. A writ will issue only upon a showing of extreme necessity and the absence of an available remedy at law. Where relief may be sought through ordinary avenues of judicial review, the writ will not lie.

*Capital Cities Media, Inc. v. Toole*, 483 A.2d 1339, 1343 (Pa. 1984).

Through his request for a writ of prohibition, Lynn is seeking to prohibit the introduction of D.G.'s testimony. However, the admissibility of evidence, including testimony proffered by witnesses, is a matter primarily falling within the discretion of the trial court. *See*, *e.g.*, *Commonwealth v. Taylor*, 876 A.2d 916, 929 (Pa. 2005). Because the trial court has the discretion to permit or prohibit D.G.'s testimony at Lynn's retrial, this request clearly falls within the ambit of the trial court's authority. As such, this request does not meet the criteria for a writ of prohibition.

Order affirmed. Counsel for Lynn directed to file substituted brief.

- 15 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/28/18</u>