J-S35045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
WILLIAM DAVID BROWN :
:
Appellant : No. 561 MDA 2022

Appeal from the Judgment of Sentence Entered March 15, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002098-2021

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: NOVEMBER 4, 2022**

Appellant, William David Brown, appeals from the judgment of sentence entered in the Court of Common Pleas of Cumberland County following his conviction at a non-jury bench trial on the charge of driving while under the influence of alcohol ("DUI")-general impairment-2nd offense, 75 Pa.C.S.A. § 3802(a)(1).  After a careful review, we affirm.

The relevant facts and procedural history are as follows: After his arrest, Appellant, who was represented by counsel, proceeded to a non-jury bench trial on March 1, 2022.  At the trial, West Shore Regional Police Officer Nikki Sheaffer testified she was on patrol on February 15, 2021, and, as she was returning to the police station at 2:00 a.m., she observed a vehicle "stopped

_____

[*] Former Justice specially assigned to the Superior Court.

in the middle of the intersection" at Fifth and Herman Avenue. N.T., 3/1/22, at 4. The officer testified "[t]he vehicle was disabled[,]" and she watched as Appellant "got out of the driver's seat and started to push his vehicle." *Id.* Officer Sheaffer noted "[t]he lights were still on, [but] [t]he vehicle wasn't running at that point." *Id.*

Officer Scheaffer testified that, without activating the emergency lights, she parked the police vehicle behind Appellant's car, exited the police vehicle, and approached Appellant. *Id.* at 4-5. The officer testified the following occurred:

> I went up and asked him if he needed any help. I went to the passenger's door, asked him to unlock the car, that way I could help push the car off to the side of the road. He stumbled with trying to unlock the vehicle by the steering wheel. After multiple attempts, he finally figured out to unlock it on the door.
>
> When I opened the door, by his behavior and actions, I called for another car, my partner to come assist. I had assumed at this point that it was a possible DUI. I then went over and asked him for identification, started talking to him a little bit more. As I was talking[,] I was able to smell an odor of an alcoholic beverage emanating from his breath.
>
> ***
>
> I was speaking to him a little bit. He had said that he was out, he was just trying to get home. He kept, you know, telling me he was just trying to get home, which was I believe half a block away from where we currently were. He said it was like the anniversary of his father's death.
>
> I asked him if he had anything to drink. I do not without reading my report remember what his answer was to that. I asked him if he would do field sobriety testing, and he submitted to field sobriety testing.

*Id.* at 5-6.

Officer Scheaffer testified that, as a result of the field sobriety tests, she concluded Appellant "was intoxicated to a level that it was unsafe for him to be driving or in control of a motor vehicle." *Id.* at 6. Officer Scheaffer testified she has received training in standardized field sobriety testing. *Id.*

On cross-examination, Officer Scheaffer admitted she did not observe Appellant driving the vehicle, and Appellant had indicated the vehicle ran out of gasoline. *Id.* at 12-13. She reiterated that she observed Appellant sitting in the driver's seat when she first approached the scene, and he exited the vehicle after she stopped the police vehicle. *Id.* at 12. She clarified that, with Appellant turning the wheel, she assisted him in pushing the vehicle to the side of the road so that it was out of the intersection. *Id.* at 13.

Officer Scheaffer admitted that it was cold when Appellant performed the field sobriety tests, and Appellant indicated his feet and hands were "numb." *Id.* Appellant told the officer he had neuropathy in both his feet and hands; however, he indicated he would "try" to perform the field sobriety tests. *Id.* at 14. Officer Scheaffer testified Appellant had difficulty performing the field sobriety tests. *Id.*

On redirect-examination, Officer Scheaffer testified that, during the encounter, "[Appellant] said he was driving and then the vehicle shut off." *Id.* On recross-examination, the officer testified she was unable to recall if Appellant ever stated whether he had been drinking. *Id.* at 15.

Appellant testified he received chemotherapy for cancer, and as a result, he developed neuropathy, which has resulted in "constant tingling and numbness in [his] fingers and in [his] feet, [his] hands and [his] feet." *Id.* at 18. He testified that, as a result of the neuropathy, he sometimes has "issues…even walking." *Id.*

Appellant admitted he took the field sobriety tests, which were administered by Officer Scheaffer; however, he was unable to perform the field sobriety tests adequately. *Id.* at 24. He testified that he "was frustrated and disappointed in [him]self because [he] couldn't do it." *Id.* However, he testified the reason he was unable to complete the field sobriety tests successfully was because of the neuropathy, which "makes like everything worse." *Id.* Appellant noted that, for fifteen minutes before the officer arrived, he attempted to push his vehicle off the road; however, he was "out of breath,…tired,…and freezing cold." *Id.* at 25.

The following relevant exchange occurred between Appellant and defense counsel on direct examination:

Q: On February 15, were you driving under the influence of alcohol?

A: I'm sorry, what?

Q: On February 15, 2021, were you driving under the influence of alcohol?

A: Yes.

Q: How long had you had alcohol previous to driving?

A: I had some earlier in the day because I was upset about my father's death.

Q: How much earlier?

A: Oh, jeez, it was daylight.

Q: How many hours prior to this?

A: Well, this happened like 1:00, 2:00 in the morning, so it would have been maybe 3:00 in the afternoon, something like that.

Q: How many drinks did you have?

A: Two.

Q: At the time that the officer came in contact with you, were you under the influence?

A: I do not believe that I was, but when they gave me the breath test, I guess there was something in there.

Q: We are not going into a breath test.  At the time that you were driving, were you under the influence of alcohol?

A: I did not think I was at all.  I felt fine.  I was just cold.

Q: Had you drank any more than the two drinks previous in the day?

A: Well, I had two early in the afternoon, then because of being upset about my father's death and everything, I did have one—I dropped my brother off—I picked him up because I couldn't find his headstone.  It's a long story there, it was---but I was going through some issues with my father.  I hadn't slept, and I did have one more before going home, it was—

Q: What time?

A: It would have been like around sunset.  Then I went home.  I was trying to remember what happened after we saw the video with the—I didn't realize there was a .06, and I'm thinking, where did that come from, and the more I thought about it—well, I was just going to say, I had—

Q: [Appellant], we are not talking about a breathalyzer right now.

A: Well, no, you talked about drink—and the more I thought about that, I thought, when I was trying to sleep and I still couldn't, I did get up at night and I did have a shot to try to help me sleep.

Q: What time were you—

A: That would have been—oh, probably just—that was a couple hours before I came out of the vehicle—excuse me, out of the house.

Q: How many hours?

A: At least two I would say.

Q: What time do you think that was?

A: Probably like 11:00 o'clock, something like that.

*Id.* at 25-27.

On cross-examination, Appellant admitted he had been driving the vehicle when the officer came upon it stopped in the intersection. *Id.* at 27. Specifically, he testified he was in the process of driving from his home to the Lemoyne Mart when the vehicle stopped. *Id.* He noted he was "hoping [the Lemoyne Mart] was open because this was the middle of [the] Covid-19 [pandemic], and everything was closed, like all the bars were closed at 10:00. [He] was hoping they were open [since] [he] wanted to get some gas and some food." *Id.* at 28.

At the conclusion of all the evidence, the trial court convicted Appellant of DUI-general impairment under 75 Pa.C.S.A. § 3802(a)(1). Following a hearing, on March 15, 2022, the trial court sentenced Appellant to five days to six months in prison. This timely, counseled appeal followed on April 13, 2022, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issue in his "Statement of Questions Involved" (verbatim):

I.      Whether the evidence was insufficient to prove beyond a reasonable doubt that Appellant was guilty of driving under the influence:

      A. Where the Commonwealth failed to prove that Appellant was intoxicated to the point where he was incapable of safely driving; and

- 6 -

B. Where the Commonwealth failed to prove that Appellant was operating a vehicle at the time that he was alleged to be impaired, particularly where the vehicle was inoperable at the time that the police interacted with Appellant?

Appellant's Brief at 7 (bold, unnecessary capitalization, and suggested answer omitted).

In the case *sub judice*, Appellant contends the evidence was insufficient to sustain his conviction for DUI-general impairment under 75 Pa.C.S.A. § 3802(a)(1). Specifically, he avers the Commonwealth failed to prove, beyond a reasonable doubt, that he was incapable of safely driving and actually driving a vehicle while he was so impaired.

Our standard of review in sufficiency of the evidence claims is as follows:

[We determine] whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa.Super. 2015) (citation omitted).

Appellant was convicted of one count of DUI-general impairment under Subsection 3802(a)(1) of the Motor Vehicle Code, which provides as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1) (bold in original).

To sustain a conviction under Subsection 3802(a)(1), the Commonwealth must prove the following elements: "the accused was driving, operating or in actual physical control of the movement of the vehicle during the time when he or she was rendered incapable of safely driving so due to the consumption of alcohol." *Commonwealth v. Segida*, 604 Pa. 103, 985 A.2d 871, 879 (2009) (holding Subsection 3802(a)(1) is an "at the time of driving" offense).

Initially, we address Appellant's contention the evidence was insufficient to sustain his conviction under Subsection 3802(a)(1) since he was not "driving" a vehicle but was sitting in a disabled vehicle when Officer Scheaffer observed him on February 15, 2021.

It is well settled that the Commonwealth can establish through wholly circumstantial evidence that a defendant was driving or operating a motor vehicle for purposes of Subsection 3802(a)(1). *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa.Super. 2003). Here, in concluding the Commonwealth met it burden in this regard, the trial court relevantly found the following:

The Commonwealth's evidence proved that Appellant had not been on the scene long after driving his vehicle before Officer Scheaffer appeared. Common sense [reveals] that [Appellant] would not have been in and around a disabled vehicle in the middle of an intersection near the police station for a significant period, in the cold, without coming to the police's attention before Officer Scheaffer happened upon the scene. Appellant said he had been out and was at that time just trying to get home, which he said repeatedly, and which he spoke about as though he desperately wished to do so, and [he] said that his home was about a half-block away. Particularly because Appellant [] complained about the cold temperatures to police during the interaction, and because Appellant appeared to be busily attempting to get the vehicle moved when the officer approached, [there was] enough evidence to infer that Appellant's vehicle, the lights of which were still on, had just become disabled, and he was attempting to quickly get it out of the intersection and home. ***See Commonwealth v. Teems***, 74 A.3d [142], 148 (Pa.Super. 2013) (finding it "common sense" that the trooper arrived on scene shortly after an accident that left the defendant's vehicle disabled on I-81 before anyone called 911).

Trial Court Opinion, filed 6/22/22, at 6-7 (citations to record omitted) (citation omitted).

We agree with the trial court's reasoning. Moreover, we note that, during trial, Appellant admitted he had been driving the vehicle when it suddenly stopped in the intersection about fifteen minutes before the officer arrived on the scene. N.T., 3/1/22, at 27.

Accordingly, we conclude the evidence was sufficient to find Appellant was driving or operating the vehicle for purposes of Subsection 3802(a)(1). ***See Segida***, ***supra***.

Appellant also contends the evidence was insufficient to find he was incapable of safely driving due to the consumption of alcohol at the time he was driving.

This Court has held that, to prove a person is incapable of driving safely, the Commonwealth must prove:

> that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely; substantial impairment means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. The meaning of substantial impairment is not limited to some extreme condition of disability. Subsection 3802(a)(1), like its predecessor, is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.

***Commonwealth v Clemens***, 242 A.3d 659, 665 (Pa.Super. 2020) (quotation omitted).

> [Further,] [t]he types of evidence that the Commonwealth may proffer in a Subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two-hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a Subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of Subsection 3802(a)(1) remains on the inability of the individual to

- 10 -

drive safely due to consumption of alcohol-not on a particular blood alcohol level.

***Segida***, ***supra***, 985 A.2d at 879.

We conclude the circumstantial evidence established that Appellant was incapable of driving safely due to the ingestion of alcohol at the time he was driving his vehicle on February 15, 2021. Initially, the undisputed evidence reveals the officer discovered Appellant sitting in his vehicle in the middle of an intersection at 2:00 a.m. Appellant admitted he consumed alcohol at approximately 3:00 p.m. on February 14, 2021, at "around sunset" on February 14, 2021, and a few hours before Officer Scheaffer observed him sitting in his vehicle in the middle of the intersection. N.T., 3/1/22, at 25-27. Officer Scheaffer testified that, when she approached Appellant, she smelled "an odor of an alcoholic beverage emanating from [Appellant's] breath." ***Id.*** at 5.

Moreover, Officer Scheaffer testified Appellant had difficulty following her instructions, including as it related to unlocking the passenger side door so that she could assist him in pushing the car out of the intersection. She noted Appellant had difficulty unlocking the door. Specifically, the officer testified Appellant fumbled with the steering wheel area trying to unlock the door, and after he was unable to do so, he turned his attention to the driver's side door. After multiple attempts, Appellant pushed the correct button to open the passenger side door.

Furthermore, the evidence reveals Appellant failed the field sobriety tests, and Appellant admitted as much at trial. Appellant proffered that he was unable to successfully complete the field sobriety tests due to a medical condition, *i.e.*, neuropathy. Officer Scheaffer, on the other hand, testified that, based on her training and experience, Appellant was unable to successfully complete the field sobriety tests due to his being under the influence of alcohol. The finder of fact was free to weigh this testimony and find credible the officer's testimony on this point. **Gonzalez**, **supra**. **See Commonwealth v. Lynn**, 192 A.3d 194, 199 (Pa.Super. 2018) ("Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court.") (citation omitted)).

Additionally, it bears mentioning that, when defense counsel asked Appellant whether "[o]n February 15, 2021, were you driving under the influence of alcohol?", Appellant answered, "Yes." N.T., 3/1/22, at 25. There is no dispute this incident occurred in the very early morning hours of February 15, 2021, just "a couple of hours" after Appellant admits to having consumed alcohol.

Based on the aforementioned, we agree with the trial court that Appellant was "not in control of his movements,…not able to operate a vehicle prudently, or adapt to any changing circumstances as a result of alcohol impairment." Trial Court Opinion, filed 6/22/22, at 5 (citations omitted). The

- 12 -

Commonwealth demonstrated, beyond a reasonable doubt, that Appellant's normal mental and physical faculties required to operate a vehicle safely were substantially impaired by alcohol at the time he was driving or operating the vehicle. ***Segida***, ***supra***.

For all of the foregoing reasons, we conclude the evidence was sufficient to sustain Appellant's conviction for DUI-general impairment under Subsection 3802(a)(1) of the Motor Vehicle Code. Thus, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/4/2022