J-S12013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT FISHER | : | |
| | : | |
| Appellant | : | No. 781 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 1, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001134-1988

BEFORE: DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.: **FILED JUNE 20, 2024**

Appellant, Robert Fisher, appeals from the March 1, 2023 judgment of sentence entered in the Montgomery County Court of Common Pleas following his conviction by a jury of first-degree murder. Appellant challenges the denial of his motion to dismiss pursuant to Pa.R.Crim.P. 600, motion to dismiss on double jeopardy grounds, and oral request for a "voluntary intoxication" jury instruction. After careful review, we affirm.

The relevant facts and procedural history are as follows. In 1987, Appellant was arrested for the 1980 murder of his then-girlfriend Linda Rowden. A jury convicted Appellant in 1988, and the court imposed the death penalty. Appellant's conviction was based, in part, on the eyewitness testimony of Frieda Sambrick.

On direct appeal, the Pennsylvania Supreme Court subsequently vacated Appellant's conviction and remanded for a new trial.

*Commonwealth v. Fisher*, 591 A.2d 710 (Pa. 1991). In 1991, a jury again convicted Appellant of Ms. Rowden's murder, and the court again imposed the death penalty.[1] In 1996, the Pennsylvania Supreme Court vacated Appellant's judgment of sentence and remanded for a new sentencing hearing, *Commonwealth v. Fisher*, 681 A.2d 130 (Pa. 1996), after which Appellant was again sentenced to death.

Following a years-long appeal process, and Post Conviction Relief Act and federal Habeas Corpus proceedings, the federal district court issued an order awarding Appellant a new trial. *Fisher v. Beard*, 2018 WL 3594990 (E.D. Pa. July 25, 2018). On January 17, 2020, the Third Circuit Court of Appeals affirmed the district court's order, directing that a new trial occur within 180 days.

At a status hearing on February 26, 2020, Appellant's counsel notified the court that she would not be ready for trial in 180 days. The court set the trial date for January 11, 2021.

On October 29, 2020, Appellant filed a motion to bar retrial on double jeopardy grounds. In the motion, Appellant asserted that the court should bar the Commonwealth from retrying him because the Commonwealth intentionally or recklessly "previously allowed false testimony regarding identification [and] did not correct the testimony[.]" Motion to Bar Retrial, 10/29/20, at ¶ 33. Appellant pointed to Ms. Sambrick's inconsistent testimony

_____

[1] Ms. Sambrick testified again at Appellant's 1991 trial.

pertaining to the year in which she arrived in the United States from Sweden and when she first met Appellant.[2] Appellant noted that in her sworn testimony, Ms. Sambrick claimed to have known Appellant since 1969, despite having provided a written statement to police in 1987 indicating that she did arrive in the United States until 1973, and did not meet Appellant until 1980, the year of the murder. Appellant claimed that the Commonwealth knew Ms. Sambrick's trial testimony was false because it had her prior written statement and yet the Commonwealth allowed this false testimony without correction despite its "absolute obligation" to do so. *Id.* at ¶ 46. Appellant concluded that this conduct constituted prosecutorial misconduct and should result in the court barring the Commonwealth from retrying him.

On December 11, 2020, the Commonwealth filed an answer to the motion, averring that Ms. Sambrick explained at Appellant's trial that her prior statements contained a few minor inconsistencies because she was scared and did not want to get involved in the case. It further averred that Appellant had had an opportunity to cross-examine her regarding these inconsistencies at trial, and the jury had been able to consider Ms. Sambrick's credibility. The Commonwealth denied that it had recklessly or intentionally elicited false testimony, failed to correct false testimony, or engaged in any prosecutorial misconduct that would preclude Appellant's retrial.

_____

[2] Appellant asserted that Ms. Sambrick's testimony at Appellant's suppression hearing and at his 1988 and 1991 trials was inconsistent with a written statement she gave to police in 1987.

Appellant's trial did not take place as scheduled on January 11, 2021, due to the statewide judicial emergency declared in response to the COVID-19 pandemic.[3]  At the time it notified the parties that trial would not occur on January 11, 2021, the court did not reschedule the trial for a date certain.

On January 14, 2021, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600.  Appellant sought dismissal on the grounds that the delay caused by the pandemic was "past the continuance sought by the defense," was not Appellant's fault, and violated his right to a speedy trial.  Rule 600 Motion, 1/14/21, at ¶ 39.  Appellant also asserted that the Commonwealth failed to exercise due diligence in bringing his case to trial by, *inter alia*, appealing the District Court's order to the Third Circuit Court of Appeals.

---

[3] Due to the COVID pandemic, in March of 2020, the Pennsylvania Supreme Court issued emergency orders suspending Rule 600 statewide through June 1, 2020.  *In re General Statewide Judicial Emergency*, 228 A.3d 1283, 1287 (Pa. filed March 18, 2020) (*per curiam*); *In re General Statewide Judicial Emergency*, 230 A.3d 1015, 1019 (Pa. filed April 28, 2020) (*per curiam*).  When the statewide judicial emergency ended, the Court expressly empowered each judicial district's president judge to enter self-effectuating declarations of judicial emergency, which could "[s]uspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial[.]" *In re General Statewide Judicial Emergency*, 234 A.3d 408 (Pa. filed May 27, 2020) (per curiam); *see* Pa.R.J.A. 1952(B)(2)(m).  On June 3, 2020, after issuing its prior orders declaring a judicial emergency, cancelling all jury and non-jury trials, and suspending Rule 600, the Honorable Thomas M. DelRicci, President Judge of the Montgomery Court of Common Pleas ordered "that any postponement of criminal case scheduling caused by the declaration of this juridical emergency, from March 12, 2020 though the expiration of the judicial emergency, shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule of Criminal Procedure 600."  *See* DelRicci Order, 6/30/20.  On August 30, 2021, President Judge DelRicci issued an order vacating his June 3, 2020 order effective August 31, 2021.  *See* DelRicci Order, 8/30/21.

The Commonwealth filed an answer to the motion on February 16, 2021, asserting that the COVID-19 judicial emergency tolled Rule 600 and that it was within its right to appeal the District Court's decision in good faith.

Following a hearing on Appellant's motions to dismiss, on May 10, 2021, the trial court denied both Appellant's motion to dismiss and his motion to bar retrial on double jeopardy grounds.[4]

Appellant's jury trial commenced on September 20, 2021, and ended in a mistrial on September 24, 2021, with a deadlocked jury.

On December 12, 2022, a new jury trial commenced. At this trial, the parties stipulated that Ms. Sambrick had entered the United States on February 19, 1973. In support of the charges against Appellant, the Commonwealth presented some live testimony and read into the record witness testimony from Appellant's 1988 preliminary hearing and 1991 trial, including that of Ms. Sambrick.[5] In particular, Ms. Sambrick testified in 1991 that she knew Appellant in 1980 and had seen him "a lot" of times prior to the day of Ms. Rowden's murder. N.T. Trial, 12/14/22, at 94, 99, 103. She further testified that she did not go to the police on the day of the murder to report what she had seen because she was afraid and did not want to get involved. She testified that initially she identified a different person as the shooter

_____

[4] On December 13, 2021, Appellant filed an untimely motion for reconsideration of the order denying Appellant's motion to bar retrial, which the trial court denied on June 3, 2022.

[5] Ms. Sambrick died prior to Appellant's 2022 trial and was, therefore, unavailable to testify.

because she wanted to be left alone, but after a couple of weeks she truthfully identified Appellant to the assistant district attorney previously assigned to the case.

On-cross examination, Ms. Sambrick testified that she first heard of or saw Appellant in 1969. Based on Ms. Sambrick's testimony at a 1988 suppression hearing, Appellant's counsel challenged Ms. Sambrick's direct testimony that she often saw Appellant.

Appellant did not testify, but the Commonwealth also read into evidence his testimony from the 2021 trial. At that trial, Appellant testified that from the time he returned from his military service in Vietnam through the date of the murder, he was addicted to, among other things, heroin. He testified that when he woke up on the day of the murder, he began smoking marijuana and drinking beer. He testified that a few hours later he drove to Philadelphia to buy heroin and speed, while also drinking wine. He testified that when he returned to Norristown, he injected heroin and then went to a bar where he continued drinking alcohol. He testified that he then got into Ms. Rowden's car with their mutual friend Richard Mayo and began to get sick from the drugs and alcohol. He testified that he exited and walked away from the car and then down an alley where he continued throwing up. He testified that he never saw Ms. Rowden alive again; about 20 or 30 minutes later he found out something had happened to her. Appellant unequivocally denied shooting Ms. Rowden.

Based on Appellant's testimony that he had been drinking alcohol and using drugs on the day of the murder, he requested that the trial court provide the jury with a voluntary intoxication instruction. The Commonwealth argued that a voluntary intoxication instruction would only be appropriate if Appellant conceded criminal liability, which Appellant did not. The trial court agreed and denied Appellant's request.

Following its deliberations, the jury convicted Appellant of first-degree murder. On March 1, 2023, the trial court imposed a sentence of life imprisonment.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following three issues on appeal:

I.    Did the lower court err in finding, for the purposes of Pa.R.Crim.P. 600, the delay in bringing [Appellant] to trial was attributable to the 38th Judicial District Covid-19 Judicial Emergency without first determining whether the Commonwealth had exercised due diligence in bringing [Appellant's] case to trial?

II.   Did the lower court err in denying [Appellant's] double jeopardy motion based on the Commonwealth's prior use of the false testimony of Frieda Sambrick regarding when she entered the country and first met [Appellant] as well as the Commonwealth's failure to correct this false testimony?

III.  Did the lower court err in denying [Appellant's] request for a voluntary intoxication instruction?

Appellant's Brief at 3.

**A.**

In his first issue, Appellant claims that the trial court erred in denying his Rule 600 motion to dismiss without first determining whether the Commonwealth exercised due diligence in bringing Appellant's case to trial. *Id.* at 24-27.

We review the trial court's disposition of a Rule 600 motion for an abuse of discretion. *Commonwealth v. Burno*, 154 A.3d 764, 793 (Pa. 2017). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused." *Id.* (citation omitted). "Our scope of review is limited to the record evidence from the speedy trial hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party." *Id*. (citation omitted).

In cases where an appellate court remands a matter to the trial court for a new trial, Rule 600 requires that trial "shall commence within 365 days from the date of the written notice from the appellate court to the parties that the record was remanded." Pa.R.Crim.P. 600(A)(2)(e). Known as the mechanical run date, that date may be extended under certain circumstances. *Commonwealth v. Wendel*, 165 A.3d 952, 956–57 (Pa. Super. 2017).[6] When a defendant seeks dismissal based on a violation of Rule 600, the court

_____

[6] *See generally Barker v. Wingo*, 407 U.S. 514, 521-22 (1972); U.S. CONST. amend. VI.

- 8 -

first establishes the mechanical run date, then determines whether any periods of delay are excludable and if so, it extends the mechanical run date to account for the periods of excludable delay to, thus, arrive at the adjusted run date. *Id.* (applying Pa.R.Crim.P. 600). The Commonwealth must bring a defendant to trial by the adjusted run date. *Commonwealth v. Roles*, 116 A.3d 122, 125 (Pa. Super. 2015).

"For purposes of [Rule 600(A)], periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). Relevantly, the time between the filing of a Rule 600 motion to dismiss and disposition of the motion is excludable. *Commonwealth v. Booze*, 953 A.2d 1263, 1277 (Pa. Super. 2008).

Here, the parties agree that the Third Circuit Court of Appeals remanded this matter to the trial court on January 17, 2020. Appellant's Brief at 26, Commonwealth's Brief at 8. Thus, the mechanical run date was 365 days later—January 16, 2021. Appellant filed his motion to dismiss on January 14, 2021, two days before the mechanical run date had even run. Therefore, even if the COVID-19 pandemic had not caused a statewide judicial emergency and the indefinite postponement of criminal trials, Appellant's Rule 600 motion to dismiss was premature. Accordingly, we discern no abuse of discretion in the denial of Appellant's Rule 600 motion to dismiss.

## B.

In his second issue, Appellant asserts that the trial court erred in denying his motion to dismiss on double jeopardy grounds. Appellant's Brief at 28-34.

"An appeal grounded in double jeopardy raises a question of constitutional law over which our standard of review is *de novo*." **Commonwealth v. Sanchez**, 262 A.3d 1283, 1288 (Pa. Super. 2021) (citations omitted).

To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:

> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Id.* (citations omitted).

"[T]he double jeopardy clause prohibits the Commonwealth from punishing an accused twice for the same offense." **Commonwealth v. Robinson**, 166 A.3d 1272, 1276 (Pa. Super. 2017) (internal quotation marks and citation omitted). Under the Pennsylvania constitution, double jeopardy bars retrial where the prosecutor's misconduct was intended to provoke the defendant into moving for a mistrial or where the prosecutor **intentionally** or **recklessly** undertakes his conduct to prejudice the defendant to the point of

the denial of a fair trial. *See Commonwealth v. Johnson*, 231 A.3d 807, 826 (Pa. 2020).

To trigger double jeopardy, "the defendant must show that the prosecutor intentionally withheld information in an attempt to deprive the defendant of a fair trial," *Commonwealth v. Lynn*, 192 A.3d 194, 200 (Pa. Super. 2018) (emphasis omitted), or consciously disregarded a substantial risk of that result. *Johnson*, 231 A.3d at 826. Where there is no such evidence, "the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less than dismissal." *Commonwealth v. Burke*, 781 A.2d 1136, 1146 (Pa. 2001). A prosecutor's failure to correct false material testimony deprives a defendant of his right to a fair trial and may bar subsequent retrial on double jeopardy grounds. *Commonwealth v. Wallace*, 455 A.2d 1187, 1190-92 (Pa. 1983) (awarding the defendant a new trial on the ground that the prosecutor failed to correct false testimony from the Commonwealth's principal witness without prejudice to the defendant's right to petition the trial court for discharge on double jeopardy grounds).

Appellant argues that the Commonwealth's repeated failure to correct Ms. Sambrick's false testimony regarding the year in which she arrived in the United States and the length of time she had known Appellant was, at a minimum, reckless and constituted prosecutorial misconduct. Appellant's Brief at 32-33. Appellant avers that the Commonwealth's failure to correct these falsehoods prejudiced him because, as the primary eyewitness to the

murder, "the length of time [Ms.] Sambrick had known [Appellant] was a vital fact in establishing the credibility of her in-court identification." *Id.* at 34.

Here, Appellant does not claim, let alone demonstrate, that the Commonwealth withheld evidence, either intentionally or recklessly. In fact, the record shows that, at each stage of this proceeding, Appellant's counsel had access to Ms. Sambrick's inconsistent statements and the ability to use them to impeach her credibility, which counsel did. Contrary to Appellant's assertions, the Commonwealth did not engage in conduct recklessly or intentionally designed to provoke Appellant into moving for a mistrial. Rather, the Commonwealth merely presented an inconsistent witness who had made potentially impeachable statements. Appellant is, thus, not entitled to relief on this claim.

## C.

In his final issue, Appellant claims that the trial court erred in failing to include a voluntary intoxication charge to the jury. Appellant's Brief at 34-35.

It is well settled that "[a] trial court's denial of a request for a jury instruction is disturbed on appeal only if there was an abuse of discretion or an error of law." *Commonwealth v. Johnson*, 107 A.3d 52, 89 (Pa. 2014) (citation omitted). "In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).

"The defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill." *Commonwealth v. Sanchez*, 82 A.3d 943, 977 (Pa. 2013). The mere fact of intoxication does not give rise to a diminished capacity defense. *See Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008) (requiring that a defendant show that he was "overwhelmed to the point of losing his faculties and sensibilities" to prove a voluntary intoxication defense) (citation omitted). "To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill." *Commonwealth v. Hutchinson*, 25 A.3d 277, 312 (Pa. 2011). Further, "[e]vidence that the accused ingested alcohol or other intoxicating drug—without more—does not warrant a voluntary intoxication instruction." *Commonwealth v. Padilla*, 80 A.3d 1238, 1363 (Pa. 2013). Moreover, if "a defendant does not admit that he killed the victim, but rather advances an innocence defense, then evidence on diminished capacity is inadmissible." *Sanchez*, 82 A.3d at 977.

The trial court denied Appellant's request for a voluntary intoxication jury instruction because the instruction did not apply to the facts presented at trial. Trial Ct. Op., 9/6/23, at 12. As set forth above, notwithstanding Appellant's admission that he used a combination of heroin and alcohol on the

day of the murder, Appellant unequivocally denied killing Ms. Rowden. For this reason alone, the trial court properly denied his request for a voluntary intoxication instruction. Moreover, our review of the record reflects that Appellant did not provide any evidence that his use of drugs and alcohol compromised his cognitive abilities to any degree, let alone a degree that would warrant a voluntary intoxication instruction. Accordingly, we discern no abuse of discretion in the trial court's refusal to provide the jury with a voluntary intoxication instruction.

**D.**

Having found each of Appellant's lacking merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/20/2024