J-A05015-22

2022 PA Super 98

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :             PENNSYLVANIA
                                  :
            v.                       :
                                  :
                                  :
BRIAN ANDREW WOLF            :
                                  :
            Appellant           :      No. 1070 MDA 2021

Appeal from the Judgment of Sentence Entered May 18, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000444-2020

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY OLSON, J.:                       **FILED: MAY 27, 2022**

Appellant, Brian Andrew Wolf, appeals from the judgment of sentence

entered on May 18, 2021, as made final by the denial of Appellant's

post-sentence motion on July 15, 2021.  We affirm.

On November 5, 2020, Appellant entered a negotiated guilty plea to

indecent assault.[1, 2]   During the plea colloquy, Appellant admitted to the

following:

> On or about October 20[, 2019, Appellant], whose date of
> birth is November 9[, 1982,] while working as the manager
> at Taco Bell . . . did have indecent contact with a juvenile
> female [whose] initials are L.C. and [who was born in 2004],
> by placing his hand down her shirt into her bra and touching

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3126(a)(1).

[2] In exchange for Appellant's plea, the Commonwealth agreed to recommend
a sentence of two years of probation.  N.T. Guilty Plea Hearing, 11/5/20, at 6.

her breasts skin to skin, he touched her butt outside of her clothes, and he did then press his body against her and did kiss her without her consent.

N.T. Guilty Plea Hearing, 11/5/20, at 5-6.

The trial court accepted Appellant's plea and deferred sentencing so that the State Sexual Offenders Assessment Board ("SOAB") could evaluate Appellant and recommend whether Appellant should be classified as a sexually violent predator ("SVP") in accordance with the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10-9799.42. **See also** 42 Pa.C.S.A. § 9799.24 (delineating procedure for assessment of individuals convicted of sexually violent offenses).  As the trial court explained:

> After [the court-ordered] evaluation, Dr. Veronique Valliere of the [SOAB] did not recommend that [Appellant] be found to be [an SVP].  On May 18, 2021, after a review of the report of Dr. Valliere, [the trial court] ordered that [Appellant] was not designated [an SVP].  On May 18, 2021, the [trial court] sentenced [Appellant] to a [term] of two years of probation, in accordance with the negotiated plea agreement. [Appellant] was [then] apprised of his [automatic, 15-year] SORNA registration requirement[] at the sentencing hearing. . . .
>
> [Appellant filed a post-sentence motion] on June 1, 2021 and [Appellant's] counsel requested *nunc pro tunc* [treatment]. On June 4, 2021, [the trial court granted Appellant the right to file his post-sentence motion *nunc pro tunc*] and a hearing was scheduled on the merits of the [post-sentence] motion on June 14, 2021.  On June 15, 2021, the [trial court denied Appellant's post-sentence motion].

Trial Court Opinion, 9/3/21, at 1.

Appellant filed a timely notice of appeal.  He raises two issues to this Court:

[1.] Whether the automatic registration requirements of Subchapter H of [SORNA] constitute an illegal sentence that violates the due process clause of the [United States] and [Pennsylvania] Constitutions because they are impermissibly punitive, based on an irrebuttable false presumption, and do not require a finding of guilt beyond a reasonable doubt[?]

[2.] Whether Appellant's being sentenced to a term of registration as a sex[] offender was also more specifically illegal in that – as he was determined not to be a sexually violent predator, by virtue of not being considered "likely to engage in predatory sexually violent offenses" – it was illogical and contradictory of neighboring provisions of the same SORNA statute to sentence him to a term of registration as a sex[] offender by virtue of his being "likely to engage in predatory sexually violent offenses"[?]

Appellant's Brief at 5.

First, Appellant claims that his obligation to register as a sexual offender under SORNA constitutes an illegal sentence. According to Appellant, this registration obligation – which arises automatically under Revised Subchapter H of SORNA – violates the due process clause of the United States and Pennsylvania Constitutions, as it is "impermissibly punitive, based on an irrebuttable false presumption, and [does] not require a finding of guilt beyond a reasonable doubt." *Id.*

Appellant's challenge to the constitutionality of his registration requirement under SORNA raises a question of law. *Commonwealth v. Morgan*, 258 A.3d 1147, 1152 (Pa. Super. 2021) (stating, "[w]hen an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law"). As with all questions of law, our standard

of review is *de novo* and our scope of review is plenary. ***Commonwealth v.***

***Lacombe***, 234 A.3d 602, 608 (Pa. 2020).

> In addressing constitutional challenges to legislative enactments, [such as SORNA, appellate courts] are ever cognizant that the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society, but also that any restriction is subject to judicial review to protect the constitutional rights of all citizens. We emphasize that a party challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution.

***Commonwealth v. Torsilieri***, 232 A.3d 567, 575 (Pa. 2020) (citations and quotation marks omitted).

Appellant was subject to an automatic, 15-year registration requirement as a sexual offender, pursuant to Revised Subchapter H of SORNA, as he committed indecent assault on or after December 20, 2012.[3] On appeal, Appellant contends that this automatic registration requirement violates his due process rights, and constitutes an illegal sentence, because it is

_____

[3] ***See*** 42 Pa.C.S.A. § 9799.12 (defining "sexual offender" as an "individual who has committed a sexually violent offense" and defining "sexually violent offense" as an "offense specified in section 9799.14 . . . as a Tier I, Tier II or Tier III sexual offense committed on or after December 20, 2012, for which the individual was convicted"); 42 Pa.C.S.A. § 9799.14(b)(6) (declaring that Appellant's indecent assault conviction under 18 Pa.C.S.A. § 3126(a)(1) constitutes a Tier I sexual offense); 42 Pa.C.S.A. § 9799.13(1) (declaring that a "sexual offender who has a residence within" Pennsylvania must "register with the Pennsylvania State Police as provided in sections 9799.15"); 42 Pa.C.S.A. § 9799.15(a)(1) ("an individual specified in section 9799.13 (relating to applicability) shall register with the Pennsylvania State Police as follows: (1) An individual convicted of a Tier I sexual offense . . . shall register for a period of 15 years").

"impermissibly punitive, based on an irrebuttable false presumption, and [does] not require a finding of guilt beyond a reasonable doubt." *See* Appellant's Brief at 10. Appellant's substantive claims echo those made in *Torsilieri*. However, where the *Torsilieri* Court held that remand was required, so that the trial court could "provide both parties an opportunity to develop arguments and present additional evidence and to allow the trial court to weigh that evidence in determining whether [the defendant] has refuted the relevant legislative findings supporting the challenged registration and notification provisions of Revised Subchapter H," Appellant in the case at bar asks that we simply deem the registration requirement unconstitutional as a matter of law without further evidentiary development. *See Torsilieri*, 232 A.3d at 596; Appellant's Brief at 11-12. Appellant's claim fails.

We detail the factual and procedural history of *Torsilieri*, as we believe that case offers dispositive guidance in the resolution of the issues presently before us. In *Torsilieri*, the defendant was convicted of aggravated indecent assault in 2017. Prior to sentencing, the SOAB concluded that the defendant "did not meet the criteria for designation as [an SVP]." *Torsilieri*, 232 A.3d at 572; *see also Torsilieri*, 232 A.3d at 572 n.2 (noting that the defendant "was not designated an SVP"). The trial court then sentenced the defendant to serve a term of incarceration, followed by a term of probation, and notified the defendant that his "aggravated indecent assault conviction automatically categorized him as a Tier III offender, triggering lifetime sexual offender registration pursuant to all applicable versions of SORNA." *Id.* at 573.

Since the defendant in **Torsilieri** committed his crime on or after December 20, 2012, Revised Subchapter H of SORNA applied to the defendant. **See id.**; **see also** 42 Pa.C.S.A. § 9799.12 (defining "sexual offender" as an "individual who has committed a sexually violent offense" and defining "sexually violent offense" as an "offense specified in section 9799.14 . . . as a Tier I, Tier II or Tier III sexual offense committed on or after December 20, 2012, for which the individual was convicted"). Moreover, while post-sentence motions were pending, the General Assembly twice amended SORNA and revised Subchapter H of the Act.

The defendant amended his post-sentence motion and claimed that the registration and notification provisions in Revised Subchapter H were unconstitutional and violated his right to due process, as they utilized an irrebuttable presumption of future dangerousness and recidivism. **See Torsilieri**, 232 A.3d at 574-575. Further, the defendant claimed that Revised Subchapter H was punitive and "violated [**Alleyne v. United States**, 570 U.S. 99 (2013) and **Apprendi v. New Jersey**, 530 U.S. 466 (2000)] by allowing the imposition of enhanced punishment based on an irrebuttable presumption of future dangerousness that is neither determined by the finder of fact nor premised upon proof beyond a reasonable doubt." **See id.** The trial court held a hearing on the defendant's motion, where the court "allowed [the defendant] to introduce affidavits and supporting documents of three experts concluding that sexual offenders generally have low recidivism rates and questioning the effectiveness of sexual offender registration systems such as

SORNA." ***Id.*** at 574. The Commonwealth "did not offer any rebuttal expert testimony nor did it offer any documents with respect to these witnesses." ***Id.*** (quotation marks and brackets omitted).

Following the hearing, the trial court concluded that the registration and notification provisions of Revised Subchapter H were unconstitutional. Therefore, the trial court "vacated [the defendant's] sentence to the extent it required him to comply with Revised Subchapter H's sexual offender registration provisions." ***Id.*** at 575. The Commonwealth then appealed to the Pennsylvania Supreme Court.

On appeal, the Commonwealth first claimed that the trial court erred when it allowed the defendant to introduce scientific evidence during the post-sentence motion hearing. ***Id.*** at 582. The defendant introduced this evidence in an attempt to "undermine[] the validity of the legislative findings supporting Revised Subchapter H's registration and notification provisions."[4]

---

[4] The legislative findings are contained in 42 Pa.C.S.A. § 9799.11(a). This subsection declares:

> **(a) Legislative findings.--**The General Assembly finds as follows:
>
> (1) In 1995 the General Assembly enacted . . . Megan's Law. Through this enactment, the General Assembly intended to comply with legislation enacted by Congress requiring that states provide for the registration of sexual offenders. The Federal statute, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (Public Law 103-322, 42 U.S.C. 14071 et seq.), has been superseded by

*(Footnote Continued Next Page)*

J-A05015-22

the Adam Walsh Child Protection and Safety Act of 2006 (Public Law 109-248, 120 Stat. 587).

(2) This Commonwealth's laws regarding registration of sexual offenders need to be strengthened. The Adam Walsh Child Protection and Safety Act of 2006 provides a mechanism for the Commonwealth to increase its regulation of sexual offenders in a manner which is nonpunitive but offers an increased measure of protection to the citizens of this Commonwealth.

(3) If the public is provided adequate notice and information about sexual offenders, the community can develop constructive plans to prepare for the presence of sexual offenders in the community. This allows communities to meet with law enforcement to prepare and obtain information about the rights and responsibilities of the community and to provide education and counseling to residents, particularly children.

(4) Sexual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest.

(5) Sexual offenders have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government.

(6) Release of information about sexual offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.

(7) Knowledge of whether a person is a sexual offender could be a significant factor in protecting oneself and one's family members, or those in care of a group or community organization, from recidivist acts by such offenders.

(8) The technology afforded by the Internet and other modern electronic communication methods makes this information readily accessible to parents, minors and private entities,

*(Footnote Continued Next Page)*

*See id.* at 585. The Commonwealth, however, claimed that the trial court should not have "second-guess[ed]" the legislative findings and public policy judgments of the General Assembly. Specifically, the Commonwealth argued, the trial court should have: 1) "defer[red] to the legislative determination that sexual offenders as a cohort pose a danger to the public health due to their high risk of recidivation" and 2) accepted "the legislative conclusion that tier-based sexual offender registration systems, as exemplified by Revised Subchapter H, are an effective means of protecting the public from the danger posed by sexual offenders." *Id.* at 582.

The **Torsilieri** Court acknowledged that "substantial policy considerations [] are generally reserved, in the first instance, to the General Assembly." *Id.* at 583 (quotation marks and citations omitted). Nevertheless, the Court held that its "deference to legislative determination[s] is not boundless" and that the legislature's policy determinations were "subject to the limits of the Constitution." *Id.* (quotation marks and citations omitted). The Supreme Court thus held:

> a viable challenge to legislative findings and related policy determinations can be established by demonstrating a consensus of scientific evidence where the underlying legislative policy infringes constitutional rights. In such cases, it is the responsibility of the court system to protect the rights of the public. Indeed, we have a particular

enabling them to undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk.

42 Pa.C.S.A. § 9799.11(a) (footnotes omitted).

responsibility in regard to SORNA, given that only a decision by this Court, finding select provisions unconstitutional under [] Pennsylvania's charter, can safeguard the constitutional rights of Pennsylvanians while also potentially averting the loss of federal funding due to Pennsylvania's non-compliance with the federal Adam Walsh Act.

Accordingly, we respectfully reject the [Commonwealth's] categorical contention that the trial court lacked the authority to consider [the defendant's] scientific evidence and to question the validity of the General Assembly's findings and policy determinations in regard to the contention that [the defendant's] various constitutional rights were violated by the statutory provisions based upon the legislative determinations. Nevertheless, we remain mindful that the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements.

*Id.* at 584 (quotation marks and citations omitted).

The *Torsilieri* Court further held that the defendant's evidence "pose[d] colorable constitutional challenges to Revised Subchapter H's registration and notification provisions based upon his asserted refutation of two critical legislative determinations: (1) that all sexual offenders pose a high risk of recidivation and (2) that the tier-based registration system of Revised Subchapter H protects the public from the alleged danger of recidivist sexual offenders." *Id.* The Court noted:

[The defendant] first presents a body of research indicating that adult sexual offender recidivism rates have been improperly exaggerated, including through citations by this Court and the United States Supreme Court. As an example, he references the Courts' repeated declaration that sexual offenders have a "frightening and high" risk of recidivism, which in turn provided support for upholding various iterations of sexual offender registration systems. [The

- 10 -

Defendant's] Brief at 17 (citing [**Smith v. Doe**, 538 U.S. 84, 103 (2003); **see also Commonwealth v. Lee**, 935 A.2d 865 882 (Pa. 2007).  The defendant] claims that this oft-quoted language derives not from rigorous scientific evidence but from an unsupported claim in "a 1988 National Institute of Corrections training manual, which in turn cited a 1986 Psychology Today article written for a lay audience."  [The Defendant's] Brief at 17 (citing Ira Ellman and Tara Ellman, *"Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 Const. Comment. 495 (2015)). He cites substantial recent evidence undermining this claim.

[The defendant] additionally presents research indicating that [] tier-based registration systems increase, rather than decrease, danger to the public because the reporting systems stigmatize the offender and their families and remove them from support systems.  He claims that research reveals that the most effective systems for identifying recidivism are those that utilize empirically derived assessment tools based on "identified risk factors that correlate well with observed recidivism levels," in contrast to the use of tier systems based upon the underlying criminal offense, which fail to take into account individual risk factors.  [The Defendant's] Brief at 57.

*Id.* at 584-585 (some citations omitted).

However, the Supreme Court held that the record was insufficiently developed and did not support a conclusion that the defendant "undermined the validity of the legislative findings supporting Revised Subchapter H's registration and notification provisions." *Id.* at 585.  The Supreme Court thus remanded the case to the trial court, so as "to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights." *Id.*  In particular, the Court held:

the evidence of record does not demonstrate a consensus of scientific evidence as was present to find a presumption not

universally true in [**In re J.B.**, 107 A.3d 1, 17-19 (Pa. 2014)], nor the "clearest proof" needed to overturn the General Assembly's statements that the provisions are not punitive, which we have noted "requires more than merely showing disagreement among relevant authorities," **Lee**, 935 A.2d at 885. We hesitate to find these standards met by the stipulated admission of three experts' affidavits, without an opportunity to weigh this evidence against contrary evidence, if any exists.

. . .

As is apparent from the trial court findings, the evidence presented by [the defendant] provides a colorable argument to debunk the settled view of sexual offender recidivation rates and the effectiveness of tier-based sexual offender registration systems underlying the General Assembly's findings as well as various decisions of this Court and the United States Supreme Court. Nevertheless, as the trial court did not have the benefit of the opposing science, if any, the evidence currently in the record does not provide a sufficient basis to overturn the legislative determination. Accordingly, we conclude that the proper remedy is to remand to the trial court to provide both parties an opportunity to develop arguments and present additional evidence and to allow the trial court to weigh that evidence in determining whether [the defendant] has refuted the relevant legislative findings supporting the challenged registration and notification provisions of Revised Subchapter H.

**Id.** at 594-596 (footnote omitted).

In the case at bar, Appellant faults the **Torsilieri** Court for remanding the case. According to Appellant, the remand order was "utterly unnecessary . . . to resolve issues that could have been simply and efficiently resolved by legal analysis alone." Appellant's Brief at 11. Indeed, although Appellant raised his constitutional claims in a post-sentence motion and the trial court held a hearing on the motion, Appellant did not request that the post-sentence

- 12 -

motion hearing be transcribed and, on appeal, Appellant claims that his constitutional claims may be decided as a matter of law. *See id.* at 11-12. *Torsilieri* is on all fours with the case at bar and, in accordance with *Torsilieri*, Appellant's claim on appeal fails.

As explained above, in *Torsilieri*, the defendant was convicted of aggravated indecent assault and was required to register as a sex offender for life, under Revised Subchapter H of SORNA. Further, the defendant in *Torsilieri* was "not designated an SVP." *Torsilieri*, 232 A.3d at 572 and 572 n.2. Here, Appellant was convicted of indecent assault and was required to register as a sex offender for 15 years, under Revised Subchapter H; as in *Torsilieri*, Appellant was also "not designated an SVP."

Moreover, Appellant's substantive claims are identical to those raised in *Torsilieri*. Specifically, Appellant claims that Revised Subchapter H's registration requirements "violate[] Pennsylvania's due process protections through the unconstitutional use of an irrebuttable presumption" and "are punitive in nature [so] that they must comply with all constitutional and statutory protections applicable to sentencing." Appellant's Brief at 11-12; *see also Torsilieri*, 232 A.3d at 585-588 (analyzing the trial court's conclusion that "Revised Subchapter H violate[s] Pennsylvania's due process protection through the unconstitutional utilization of an irrebuttable presumption") and 588-594 (analyzing the trial court's conclusion that Revised Subchapter H's registration and notification provisions are unconstitutional, as they are punitive).

As explained above, in *Torsilieri*, the Supreme Court held that the record was insufficient to allow for a determination of unconstitutionality, as: "the evidence of record does not demonstrate a consensus of scientific evidence as was present to find a presumption not universally true in *J.B.*, nor the 'clearest proof' needed to overturn the General Assembly's statements that the provisions are not punitive, which we have noted 'requires more than merely showing disagreement among relevant authorities.'" *Torsilieri*, 232 A.3d at 594 (citations omitted). The Supreme Court thus "remand[ed the case] to the trial court to provide both parties an opportunity to develop arguments and present additional evidence and to allow the trial court to weigh that evidence in determining whether [the defendant] has refuted the relevant legislative findings supporting the challenged registration and notification provisions of Revised Subchapter H." *Id.* at 596. In the case at bar, however, Appellant claims that the *Torsilieri* Court erred when it remanded the case to the trial court and that we should simply decide his constitutional claims as a matter of law. Appellant's Brief at 11-12.

We will not venture beyond our Supreme Court's holding in *Torsilieri*. In *Torsilieri*, the Supreme Court concluded that the defendant's scientific evidence "presented a colorable argument that the General Assembly's factual presumptions have been undermined by recent scientific studies" – and, even though the Commonwealth did not present any contrary evidence during the post-sentence motion hearing – the Supreme Court still concluded that "the evidence of record does not demonstrate a consensus of scientific evidence as

was present to find a presumption not universally true in *J.B.*, nor the 'clearest proof' needed to overturn the General Assembly's statements that the provisions are not punitive, which we have noted 'requires more than merely showing disagreement among relevant authorities.'" *Id.* at 594 (citations omitted). In the case at bar, Appellant simply asks that we hold Revised Subchapter H's registration provisions unconstitutional as a matter of law. Given that our Supreme Court, in *Torsilieri*, refused to hold Revised Subchapter H unconstitutional despite uncontradicted evidence presented by the defendant, we too refuse to hold the statutes unconstitutional where Appellant has presented no evidence, whatsoever, to "demonstrate a consensus of scientific evidence as was present to find a presumption not universally true in *J.B.*, nor the 'clearest proof' needed to overturn the General Assembly's statements that the provisions are not punitive." *See id.* at 594 (citations omitted). Appellant's first numbered claim on appeal thus fails.

Next, Appellant claims that his "own case is proof that the irrebuttable presumption on which SORNA's registration[] requirements depend is false." According to Appellant, since he was not designated an SVP, "it cannot be universally true that all sex-offenders are 'likely to engage in predatory sexually violent offenses.'" Appellant's Brief at 36-37.

Appellant's claim fails. In *Torsilieri*, the defendant was also "not designated an SVP" and the Supreme Court still concluded that the defendant did not "demonstrate a consensus of scientific evidence as was present to find a presumption not universally true in *J.B.*, nor the 'clearest proof' needed to

- 15 -

overturn the General Assembly's statements that the provisions are not punitive." ***Torsilieri***, 232 A.3d at 594. Again, in the case at bar, Appellant invites us to go beyond ***Torsilieri's*** holding and conclude that the registration statutes are, as a matter of law, unconstitutional on their face. We decline Appellant's invitation. ***Torsilieri*** binds this Court and Appellant's claim fails, as Appellant unsupported challenge does not "demonstrate a consensus of scientific evidence as was present to find a presumption not universally true in ***J.B.***, nor the 'clearest proof' needed to overturn the General Assembly's statements that the provisions are not punitive." ***See Torsilieri***, 232 A.3d at 594.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2022