J-S42036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VERNON ADVONE CANTY | : | |
| | : | |
| Appellant | : | No. 702 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 6, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001418-2021

BEFORE: BOWES, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 26, 2024**

Appellant, Vernon Advone Canty, appeals from the January 6, 2023 judgment of sentence entered in the Delaware County Court of Common Pleas following his conviction of Rape—Threat of Forcible Compulsion, Involuntary Deviate Sexual Intercourse ("IDSI"), Sexual Assault, and False Imprisonment.[1] Appellant challenges the denial of his motion to dismiss on double jeopardy grounds and the requirement that he register for his lifetime as a sex offender under Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA").[2] After careful review, we affirm.

The relevant facts and procedural history are as follows. On July 26, 2019, Appellant forced the then-17-year-old victim ("Victim") into his car,

---

[1] 18 Pa.C.S. §§ 3121(a)(2), 3123(a)(2), 3124.1, and 2903(b), respectively.

[2] 42 Pa.C.S. §§ 9799.10-9799.42.

drove her to the soccer stadium in Chester, Delaware County, and raped her. The following day, and as a result of the assault, the Victim went to the hospital. Hospital personnel reported the assault to police. During the ensuing police investigation, the Victim identified Appellant as the perpetrator. When the police apprehended Appellant, he asserted, among other things, that he believed the Victim was not a minor and that the sex was consensual.

Appellant's jury trial commenced on June 27, 2022. Immediately following jury selection, Appellant's counsel became ill and substitute counsel assumed representation. Two days later, the jury convicted Appellant of multiple offenses and acquitted him of Kidnapping and Terroristic Threats.

On October 12, 2022, Appellant's counsel filed a sentencing memorandum and a "Motion to Dismiss for Prosecutorial Misconduct on Grounds of Double Jeopardy" ("Motion to Dismiss"). In the motion, Appellant alleged that, following trial, he learned that the Commonwealth had failed to disclose the Victim's criminal history, which included a *crimen falsi* conviction.[3] He argued that, had the jury been made aware of the Victim's prior convictions, "it would have impacted their assessment of credibility for telling the truth." Supplemental Memorandum of Law in Support of Motion to Dismiss, 10/20/22, at 7. Appellant concluded that the Commonwealth's conduct consisted of prosecutorial misconduct and deprived Appellant of his right to a fair trial and, therefore, irrespective of whether the Commonwealth's

---

[3] In particular, Appellant claimed that the Victim had been convicted of Robbery, Kidnapping, and Aggravated Assault.

omission was intentional or recklessly negligent, he was entitled to dismissal of the case against him with prejudice.

On October 21, 2022, the trial court held a hearing on Appellant's Motion to Dismiss at which Appellant also made an oral motion for extraordinary relief pursuant to Pa.R.Crim.P. 704(B)(1).[4] After considering the argument set forth by the parties, the court denied Appellant's Motion to Dismiss, but granted his oral motion for a new trial. Relevant to the instant appeal, the court granted Appellant's request for a new trial after finding that the Commonwealth had unintentionally failed to provide Appellant with the Victim's criminal history, including the *crimen falsi* conviction, and concluding that because Appellant's counsel became ill immediately before jury selection, counsel who had assumed representation was not fully prepared for trial.

Appellant's new trial began on November 29, 2022. On December 1, 2022, the jury convicted Appellant of the above crimes. The verdict sheet did not reference any offense date or dates.

On January 6, 2023, the trial court sentenced Appellant to a term of 7½ to 15 years of incarceration followed by eight years of probation. The court also ordered Appellant to register for his lifetime as a Tier III sexual offender.

---

[4] Rule 704(B)(1) provides that "[u]nder extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial." Pa.R.Crim.P. 704(B)(1).

On January 17, 2023, Appellant's counsel filed a post-sentence motion challenging the weight of the evidence.[5] That same day, the trial court entered an order appointing the Delaware County Office of the Public Defender to represent Appellant and extending the deadline to file a post-sentence motion to January 27, 2023.[6]

On January 20, 2023, appointed counsel filed an application to supplement the post-sentence motion filed by Appellant's former counsel, which the trial court granted on January 24, 2023. Two days later, on January 26, 2023, counsel filed a supplemental post-trial motion in which she reasserted Appellant's weight of the evidence claim and raised a challenge to the discretionary aspects of his sentence. Counsel also asserted that SORNA is unconstitutional and requested that the court stay Appellant's registration requirement pending the Pennsylvania Supreme Court's decision in *Commonwealth v. Torsilieri*, 97 MAP 2022.[7]

On February 10, 2023, the trial court entered an order granting in part and denying in part Appellant's post-sentence motion. In particular, the court

_____

[5] The 10th day after judgment of sentence was Monday, January 16, 2023, which was Martin Luther King, Jr. Day. Accordingly, we deem Appellant's post-sentence motion, filed on Tuesday, January 17, 2023, timely.

[6] The docket does not reflect that Appellant's counsel had requested leave to withdraw nor that the trial court had granted counsel such leave.

[7] The Pennsylvania Supreme Court is currently considering the punitive nature and constitutionality of Subchapter H's registration requirements following remand to the trial court ordered in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020).

denied Appellant's weight of the evidence and discretionary aspects of sentencing claims but stayed his SORNA registration pending resolution of *Torsilieri*.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1. Whether the trial court erred in denying Appellant's motion to dismiss with prejudice on double jeopardy grounds, where the prosecution violated its discovery obligations and failed to timely disclose exculpatory impeachment evidence regarding the [Victim's] criminal history, including violent *crimen falsi* convictions?

2. Whether the sentencing court's imposition of sexual offender registration is illegal and Appellant is entitled to less restrictive Subchapter I requirement, since the jury never made any offense date findings, and in any event, Subchapter H's more restrictive provisions are unconstitutional?

Appellant's Brief at 5.

**A.**

In his first issue, Appellant claims that the trial court erred in denying his Motion to Dismiss. *Id.* at 14-18. He asserts that the Commonwealth committed prosecutorial misconduct by intentionally withholding evidence of the Victim's prior *crimen falsi* conviction and, thus, depriving him of a fair trial. *Id.* at 17-18. In the alternative, he claims that the Commonwealth "recklessly disregarded [Appellant's] right to a fair trial by waiting until moments before the first jury selection, at the earliest, to disclose critical impeachment evidence." *Id.* at 18. He argues that, because this case pitted his credibility

against that of the Victim, the Commonwealth deprived him of his "right to attack the [Victim's] truthfulness with compelling evidence of her prior convictions involving violence and dishonesty." *Id.*

An appeal grounded in double jeopardy raises a question of constitutional law over which our standard of review is *de novo*. *Commonwealth v. Sanchez*, 262 A.3d 1283, 1288 (Pa. Super. 2021)

To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.

> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Id.* (citations omitted).

"[T]he double jeopardy clause prohibits the Commonwealth from punishing an accused twice for the same offense." *Commonwealth v. Robinson*, 166 A.3d 1272, 1276 (Pa. Super. 2017) (internal quotation marks and citation omitted). Under the Pennsylvania constitution, double jeopardy bars retrial where the prosecutor's misconduct was intended to provoke the defendant into moving for a mistrial or where the prosecutor intentionally or recklessly undertakes his conduct to prejudice the defendant to the point of the denial of a fair trial. *Commonwealth v. Johnson*, 231 A.3d 807, 826 (Pa. 2020).

To trigger double jeopardy, "the *defendant* must show that the prosecutor intentionally withheld [exculpatory] information in an attempt to deprive the defendant of a fair trial," *Commonwealth v. Lynn*, 192 A.3d 194, 200 (Pa. Super. 2018) (emphasis changed), or consciously disregarded a substantial risk of that result. *Johnson*, 231 A.3d at 826. Where there is no such evidence, "the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less than dismissal." *Commonwealth v. Burke*, 781 A.2d 1136, 1146 (Pa. 2001).

Here, the trial court found that Appellant failed to meet his burden to show that the Commonwealth intentionally withheld exculpatory evidence in order to deprive Appellant of a fair trial or consciously disregarded a substantial risk of that result. Instead, the court concluded that the Commonwealth's omission was "unintentional and an oversight" and that "[n]othing in the record indicates malicious prosecutorial misconduct designed to provoke Appellant into requesting a retrial." Trial Ct. Op. at 9. The court further concluded that the Commonwealth's omission "clearly" did not rise to "a fundamental breakdown of the judicial process, requiring a dismissal on double jeopardy grounds." *Id.*

Following our review of the record, including the notes of testimony from the October 21, 2022 hearing on the Motion to Dismiss, we conclude that the record supports the trial court's conclusion that Appellant did not demonstrate

that the Commonwealth acted intentionally or with malicious prosecutorial disregard.[8]

Moreover, we will not substitute our judgment with respect to the court's credibility and weight of the evidence determinations. Appellant merely presented evidence that the Commonwealth failed to provide him with information about the Victim's *crimen falsi* conviction, not that the Commonwealth did so intentionally. Appellant argues that we should infer that the Commonwealth acted intentionally or with malicious prosecutorial disregard in failing to provide the information. We decline to do so as no legal authority permits such an inference. Since Appellant failed to establish that the Commonwealth withheld the information intentionally or with malicious prosecutorial disregard, the trial court properly denied his Motion to Dismiss and provided the proper remedy of a new trial. Accordingly, following our *de novo* review of Appellant's constitutional claim that double jeopardy principles precluded his retrial, we conclude that it lacks merit.[9]

---

[8] In fact, the notes of testimony reflect that Appellant presented no evidence whatsoever pertaining to the reasons for the Commonwealth's conduct or omissions. The only evidence adduced at that hearing concerned Appellant's oral motion for arrest of judgment. **See** N.T. Hr'g, 10/21/22, at 4 (where Appellant's primary trial counsel, Attorney Clinton Johnson, confirmed that "there was information when [he] took ill that was not conveyed to [substitute trial counsel] Mr. Raynor[.]).

[9] Appellant's alternate claim that the Commonwealth "recklessly disregarded [his] right to a fair trial by waiting until moments before the first jury selection, at the earliest, to disclose critical impeachment evidence," Appellant's Brief at 18, is waived as our review of the record indicates that he has raised this
*(Footnote Continued Next Page)*

**B.**

**I.**

In his next issue, Appellant claims that the trial court erred in requiring him to register as a sex offender pursuant to Subchapter H of SORNA instead of pursuant to Subchapter I because the jury did not make a specific finding as to the date of the rape perpetrated by Appellant. Appellant's Brief at 19-21. He concludes, therefore, that this Court must vacate the order directing Appellant to register pursuant to Subchapter H and direct Subchapter I registration, even if Appellant's committed his crimes after 2012. *Id.* at 21. In the alternative, Appellant argues that even if the jury's verdict supports the imposition of Subchapter H registration, Subchapter H is unconstitutional. *Id.* at 21-26.

Appellant's issue raises a question of law. *Commonwealth v. Bricker*, 198 A.3d 371, 375 (Pa. Super. 2018). A challenge to the legality of a sentence presents a question of law for which "our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Alston*, 212 A.3d 526, 528 (Pa. Super. 2019).

---

specific claim for the first time on appeal. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see also Commonwealth v. Gordon*, 528 A.2d 631, 638 (Pa. Super. 1987) ("A theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief.").

The General Assembly enacted SORNA II in response to our Supreme Court's determinations that aspects of SORNA I were unconstitutional. 42 Pa.C.S. § 9799.51(b)(4) (citing **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) ("**Butler I**")).[10] Relevant to Appellant's claims, the General Assembly revised Subchapter H, 42 Pa.C.S. §§ 9799.10-9799.42, to apply only to individuals who committed a sexually violent offense on or after December 20, 2012. **Id.** § 9799.12 (defining "sexually violent offense"). It also added Subchapter I, **id.** §§ 9799.51-9799.75, to address those who committed designated offenses prior to December 20, 2012, if the offender was subject to registration requirements on that date. **Id.** § 9799.52. The registration requirements of Subchapter H, which are based on SORNA I, are more onerous than those under Subchapter I. **See Commonwealth v. Lacombe**, 234 A.3d 602, 607 n.4, 626 (Pa. 2020) (declaring the Subchapter I registration requirements to be non-punitive).

---

[10] In **Muniz**, the Supreme Court held "that SORNA [I]'s registration requirements constituted punishment and their retroactive application constituted a violation of the constitutional prohibition against ex post facto laws." **Commonwealth v. Lacombe**, 234 A.3d 602, 615 (Pa. 2020) (citation omitted).

In **Butler I**, this Court held that SORNA I's SVP designation process was unconstitutional. **Butler I**, 173 A.3d at 1217-18. The Supreme Court subsequently overturned this holding in **Commonwealth v. Butler**, 226 A.3d 972, 976 (Pa. 2020) ("**Butler II**"), concluding that the SVP requirements did not constitute criminal punishment and thus were not subject to the constitutional protections considered in **Butler I**.

Here, it is undisputed that the crimes with which the Commonwealth charged Appellant occurred on July 26, 2019, well after the date triggering the application of Subchapter H. Nevertheless, Appellant argues that the trial court should have applied Subchapter I because the jury did not make a specific finding regarding the date of the offence. In support, he relies on *Alston*, as well as *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). This argument merits no relief.

*Apprendi* and *Alleyne* both stand for the proposition that any fact that increases the penalty for a mandatory minimum is an element that must be submitted to the jury. Appellant's argument, thus, relies on the flawed presumption that Subchapter H's registration requirements are punitive. To date, no Pennsylvania appellate court has held that revised Subchapter H is punitive. *See*, *e.g.*, *Commonwealth v. Thorne*, 276 A.3d 1192, 1198 (Pa. 2022) ("The question of whether the lifetime registration requirement of Revised Subchapter H is punitive in nature . . . currently remains open."); *Commonwealth v. Wolf*, 276 A.3d 805, 813 (Pa. Super. 2022) (upholding Wolf's registration requirements, despite his argument that Revised Subchapter H is punitive.). Accordingly, since Appellant has not shown that Revised Subchapter H is punitive, the jury was not required to make a specific finding as to the date of the offense in order for the court to apply it. *See Butler*, 226 A.3d at 993 (explaining that *Alleyne* and *Apprendi* do not apply if registration requirements are non-punitive).

Further, Appellant's reliance on **Alston** in support of his claim that "if the factfinder's verdict form does not make offense date findings, Subchapter I controls[,]" Appellant's Brief at 20, is misplaced. In **Alston**, unlike in the instant case, the defendant's crimes straddled the operative dates of Subchapter I and Subchapter H. Nevertheless, the jury did not specifically determine when the defendant committed the offenses. The **Alston** Court, therefore, concluded that Subchapter I applied. Here, Appellant does not argue that the offense date straddles the operative dates of Subchapters I and H, and there is no question that the jury convicted Appellant of offenses alleged to have occurred on only one date—July 26, 2019. Because the offense date did not straddle the effective dates of Subchapter I and Subchapter H, **Alston** does not apply. Appellant's claim that the court should have ordered him to register pursuant to Subchapter I rather than Subchapter H, thus, fails.

## II.

Appellant also argues, in the alternative, that even if the jury's verdict supports the imposition of Subchapter H registration, Subchapter H is unconstitutional. In support of this claim, Appellant "makes the same claims as in **Torsilieri** concerning the constitutionality of Subchapter H." Appellant's Brief at 24.

Briefly, in 2020 the Pennsylvania Supreme Court vacated a trial court order finding Revised Subchapter H unconstitutional. **Torsilieri**, 232 A.3d 567, 596 (Pa. 2020). In that case, while the Court found that Torsilieri

"presented a colorable argument" that the presumptions underpinning Revised Subchapter H had "been undermined by recent scientific studies,"[11] the Court concluded that the record before it did not "demonstrate a consensus of scientific evidence" refuting the core presumptions, "nor the clearest proof needed to overturn the General Assembly's statements that the provisions are not punitive[.]" *Id.* at 594 (internal citation and quotation marks omitted). Because "the Commonwealth's tactics" in that case had "potentially prevented the necessary development of the record," the Court remanded the case to give the parties a second chance to present evidence. *Id.* at 595.

Since the Supreme Court issued its decision remanding *Torsilieri*, this Court has rejected challenges to Revised Subchapter H that did not present the "clearest proof" *Torsilieri* demands. *See*, *e.g.*, *Wolf*, 276 A.3d at 813 (rejecting an argument that Revised Subchapter H is unconstitutional and affirming the judgment of sentence where the appellant had "presented no evidence, whatsoever" to meet his burden). Here, Appellant similarly presented no evidence to support his constitutional challenges to Subchapter H. Accordingly, Appellant's challenges to Subchapter H do not merit relief.

Judgment of sentence affirmed.

---

[11] Specifically, the presumptions that: (1) "all sexual offenders pose a high risk of recidivism"; and (2) "the tier-based registration system of Revised Subchapter H protects the public" from that risk. *Torsilieri*, 232 A.3d at 594.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/26/2024