J-A08011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES EDWARD HILL, JR. | : | |
| | : | |
| Appellant | : | No. 996 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 22, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003124-2020

BEFORE: BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.: **FILED APRIL 11, 2024**

Charles Edward Hill, Jr. appeals from the aggregate judgment of sentence of five to ten years of imprisonment, followed by three years of probation, imposed upon his convictions for sexual assault and indecent assault without consent. We affirm.

We glean the following background from the certified record. On February 2, 2020, A.Y. ("Victim"), then twenty-three years old, attended a Super Bowl party at the house of her mother, Cachet Johnson. Appellant was then in a relationship with Cachet Johnson and also in attendance at the party, along with a few of Victim's friends and family members. At some point in the evening, Victim accepted an invitation from Appellant to go to a local bar so that Appellant could buy her some drinks, since he had missed celebrating her birthday the week before. Victim drove her friend, Deja Johnson, home before proceeding to the bar with Appellant. After consuming a few drinks each,

Victim and Appellant left and went to Victim's apartment so that she could collect clothing for her three-year-old daughter, who, along with Victim, was going to spend the night at Cachet Johnson's home.

In the apartment, Appellant indicated that he was going to use the restroom while Victim was in her daughter's room packing a travel bag. Before Victim finished packing, she noticed Appellant standing in the doorway to the room. He asked if Victim was ready, but instead of leaving, he began walking toward her and "play fighting," striking her on the arm. N.T. Trial, 5/3/22, at 43. Victim told Appellant that he was drunk and requested that he stop, but he did not. Appellant then pulled her hair extensions such that they were partially dangling from the side of her head, and eventually wrapped his arm around her neck, as if in a hug. Victim fell backward onto her daughter's bed, with Appellant falling on top of her. Appellant began kissing her and she told him to stop, nudging his face away at one point. Appellant nonetheless held Victim down with his hands on her chest, fondling her breasts under her shirt. With one hand, he was then able to lower Victim's pants and underwear, and subsequently his own. He pushed Victim's knees toward her chest and penetrated her vagina with his penis, telling Victim that he loved her.

After Victim demanded that Appellant stop and get off her, and indicating that this should not be happening, Appellant stopped. He allowed Victim to sit up in the bed, though both still had their clothing partially removed. Appellant then told Victim that nobody should know what happened, and eventually pushed her back down, saying that he wanted to

continue. At this point, he spit on Victim's vagina. She again demanded that he stop. Appellant did so and reiterated to her that nobody be told about the incident. He then allowed Victim to get fully dressed.

Victim drove herself and Appellant back to her mother's house, opting not to bring the clothes bag since she decided that neither she nor her daughter would spend the night. Upon entering the house, Victim immediately went upstairs to retrieve her daughter. She encountered her brother, Aaron Merlin, who asked if everything was okay. Since Appellant was nearby, Victim pressed a finger to her lips to indicate being quiet. Without discussing it further, she got her daughter and returned to her car to leave. Appellant followed Victim to her car, asking her to stay because it would look unusual if she abruptly chose not to spend the night. Victim drove away and Appellant got into another vehicle and followed her. Victim stopped at a gas station because she did not want Appellant following her to her apartment. Appellant pulled up to a pump behind her and began to ask her to come back, also offering to pay for her gas.

Victim allowed Appellant to pay for her gas and left the station. En route to her apartment, she called her friend, Deja Johnson, to explain what had occurred. She also texted another friend several times after she got home, asking him to get back to her because something important had happened. The friend did not immediately respond since it was nearly 2:30 a.m. on February 3. Several hours later, she also reached out to her ex-husband's brother.

Victim ultimately went to work that same morning but did not stay for her whole shift. On her way home from work, she called and spoke with Aaron Merlin about the incident. She also called her mother and Appellant's mother on a three-way call. When Victim got home, she met with Deja Johnson, who encouraged her to contact the police. She did so, and spoke with the responding officers, who urged her to get a rape kit performed at the hospital. Victim proceeded to Reading Hospital that same afternoon and underwent an examination by a sexual assault nurse examiner ("SANE"). The SANE nurse did not note any observable injuries to Victim, including to her genitals. Likewise, testing did not reveal the presence of spermatozoa on the parts of Victim's body that were swabbed.

Based on this foregoing, Appellant was charged with multiple counts, including rape by forcible compulsion, sexual assault, indecent assault without consent, and indecent assault by forcible compulsion. Appellant waived his right to a jury and proceeded to a two-day bench trial. The Commonwealth introduced testimony from several witnesses consistent with the above account, as well as text messages from Victim's phone demonstrating her communications with various individuals in the early morning hours of February 3, 2020, and throughout that day. The Commonwealth also introduced surveillance video from the bar and gas station that Appellant and Victim patronized, which corroborated Victim's timeline of events. Appellant testified on his own behalf, and his narrative was generally consistent with Victim's, except with regard to what occurred in the apartment. He stated

that Victim had approached him and touched his chest, and then began touching her own genitals as if to pleasure herself. Appellant said that he rejected this perceived advance and insisted on returning to Cachet Johnson's house.

At the trial's conclusion, the court found Appellant guilty of sexual assault and indecent assault without consent. It acquitted him with respect to the remaining counts that included a forcible compulsion element. The court later held a hearing to determine whether Appellant satisfied the criteria of being a sexually violent predator ("SVP"). At the hearing, Appellant raised a challenge to the constitutionality of any registration requirement he may be subject to pursuant to Revised Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA"). Appellant's position relied upon an opinion issued by the Honorable Allison Bell Royer of the Chester County Court of Common Pleas in the case of **Commonwealth v. Torsilieri**, CP-15-CR-0001570-2016.[1] The trial court deferred a ruling on these issues to allow the parties to brief the matter. Appellant filed a memorandum of law reiterating his argument, and the Commonwealth submitted a written response.

The court then held a phone conference with counsel for Appellant and the Commonwealth approximately twenty days before sentencing, asking if defense counsel intended to present any evidence in support of the SORNA

---

[1] The Commonwealth's appeal of that decision is currently pending review by our Supreme Court. **See Commonwealth v. Torsilieri**, 97 MAP 2022.

challenge. Counsel indicated that he did not and would rely instead on case law for his argument. On November 22, 2022, the court sentenced Appellant as indicated hereinabove, classifying him as a Tier III sex offender with lifetime registration requirements. It concluded that the Commonwealth failed to prove that Appellant met the criteria of being an SVP. Notably, at no point during the sentencing hearing did Appellant present any testimony or evidence concerning his claim that Revised Subchapter H of SORNA is unconstitutional.

Appellant filed a post-sentence motion asserting, *inter alia*, that the verdicts were against the weight of the evidence. The trial court denied the motion without a hearing. This timely appeal followed. Appellant complied with the trial court's order to file a concise statement of errors, and the court entered an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents the following issues for our review:

I.      Did the trial court err in finding that Appellant was guilty of sexual assault and indecent assault - forcible compulsion[2] when the evidence was insufficient to demonstrate that Appellant engaged in sexual intercourse or deviate sexual intercourse without [Victim]'s consent[?] The evidence was equally insufficient to demonstrate that Appellant caused [Victim] to come into contact with seminal fluid, urine[,] or feces for the purpose of arousing sexual [desire] without [her] consent[.]

II.     Did the trial court err in finding the witnesses, including the alleged victim, credible to such a degree that these crimes were

_____

[2] Appellant was acquitted of this crime; based on the arguments made in the remainder of his brief, it appears that Appellant actually intended to contest the conviction for indecent assault without consent. Accordingly, we address his claim thusly.

- 6 -

proved beyond a reasonable doubt when no physical or video evidence[,] as presented by the [Commonwealth] during the bench trial[,] demonstrate[d] any antagonism between Appellant and the alleged victim and where the court relied upon the hearsay testimony of a friend of the alleged victim and upon the testimony of the alleged victim's brother, including contradictory statements by the brother, [Aaron Merlin], during the trial?

III.   Did the trial court err in requiring Appellant to register as a lifetime registrant under [SORNA] when the constitutionality of that act has been found lacking in an action that is currently pending before the Pennsylvania Supreme Court?

Appellant's brief at 7 (cleaned up).

Appellant's first claim attacks the sufficiency of the evidence. We consider Appellant's position mindful of the following well-settled standard of review:

When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Roberts*, 293 A.3d 1221, 1223 (Pa.Super. 2023) (cleaned up). Further, a victim's credible testimony is, by itself, sufficient to uphold a conviction. *See Commonwealth v. Johnson*, 180 A.3d 474, 481

(Pa.Super. 2018) (holding that "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime").

Appellant challenges his convictions for both sexual assault and indecent assault without consent. Concerning sexual assault, "[e]xcept as provided in [§] 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. A person commits the crime of indecent assault without consent if he "has indecent contact with the complainant, causes the complainant to have indecent contact with the person[,] or intentionally causes the complainant to come into contact with seminal fluid, urine[,] or feces for the purpose of arousing sexual desire in the person" and he "does so without the complainant's consent." 18 Pa.C.S. § 3126. The Crimes Code defines "indecent contact" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

On appeal, Appellant argues that neither of his convictions can stand since "[t]here was no independent evidence produced at trial that indicates Appellant engaged in any sort of sexual activity with [Victim]." Appellant's

brief at 20. He also contends that since the trial court acquitted him as to the charges of rape by forcible compulsion and indecent assault by forcible compulsion, there was no basis for conviction as to sexual assault and indecent assault without consent. *Id*. Appellant notes that by Victim's own testimony, she did not call out for help or immediately avoid Appellant after the incident. *Id*. at 26-27. He also highlights that the SANE nurse who examined Victim less than twenty-four hours after the incident did not find any sign of semen, bruising, or injury, and that none of the items recovered by police from Victim's apartment was sent for any sort of testing. *Id*. at 28-29. Appellant further opines that to sustain the conviction for indecent assault without consent, the Commonwealth was required to prove that he "caused [Victim] to come into contact with seminal fluid, urine[,] or feces," which did not occur here. *Id*. at 25.

> In rejecting this claim, the trial court articulated as follows:
>
> The court found [Victim] credible in her testimony that Appellant had, without her consent: penetrated her vagina with his penis; fondled her breasts; and spit on her vagina. This testimony, standing alone, was sufficient to find Appellant guilty of sexual assault and indecent assault without [Victim]'s consent. Although Appellant argues that no physical evidence was presented by the Commonwealth to corroborate [Victim]'s testimony, physical evidence is not required for a conviction. It simply does not matter whether Appellant finds a witness's testimony lacking in credibility as such matters are solely within the province of the fact finder.

Trial Court Opinion, 6/29/23, at 10 (cleaned up).

Upon review, we agree with the trial court that the evidence was sufficient to sustain both of Appellant's convictions. Victim's testimony that Appellant penetrated her vagina with his penis, without her consent, itself supported the conviction for sexual assault. Further, her attestation that during the encounter, Appellant fondled her breasts under her shirt, without her consent, satisfied the elements required for indecent assault. Based on the facts that Appellant was kissing Victim and telling her that he loved her as he groped her, the Commonwealth proved that his indecent contact was for the purpose "of arousing sexual desire." 18 Pa.C.S. § 3126(a). As the trial court correctly noted, no independent evidence beyond Victim's credible testimony was required to prove these crimes. **See Johnson**, 180 A.3d at 481.

Moreover, to the extent that Appellant's argument rests on the belief that his indecent assault conviction **must** have been proven by showing Victim's forced contact with seminal fluid, urine, or feces, he is plainly mistaken. While that describes some types of contact that constitute the crime of indecent assault, § 3126 clearly states that it may also be shown from Appellant having "indecent contact with the complainant," which is exactly what occurred here. 18 Pa.C.S. § 3126(a). Therefore, Appellant is not entitled to relief on this claim.

Next, Appellant asserts that the trial court erred in finding Victim and other Commonwealth witnesses credible, and thus that his convictions were

against the weight of the evidence.[3]  **See** Appellant's brief at 33-37.  The following law applies to our review of Appellant's claim:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court.  Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

**Commonwealth v. Arias**, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up).

Therefore, we must determine whether the trial court, in rejecting Appellant's challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will."  **Commonwealth v. Clay**, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

Appellant argues that the surveillance video showing Appellant with Victim at the bar before the incident and at the gas station afterwards made

---

[3] In his statement of questions presented as to this issue, Appellant also states that the court erred in relying on hearsay testimony.  **See** Appellant's brief at 7.  However, nowhere in his brief does he discuss the hearsay rules or otherwise develop this argument.  Accordingly, we treat this claim as one challenging the weight of the evidence and not the admissibility of any evidence.

it clear that there was no animosity between them. *See* Appellant's brief at 34-35. He believes that Victim's testimony should have been disregarded as incredible by the court, since she initially indicated to police that her hair extensions were pulled, but no injuries to her scalp were observed during the SANE examination. *Id*. at 35. Likewise, Appellant highlights that Victim's clothes did not appear to be damaged, despite her testimony that they were tugged on by Appellant. *Id*. Appellant further contends that Aaron Merlin gave conflicting accounts, testifying at trial that he saw a bruise on Victim's face after the assault, but failing to mention that to interviewing police. *Id*. While Appellant concedes that "[i]t is legally accurate to state that the word of the victim can be enough to prove charges beyond a reasonable doubt," he nonetheless maintains that it "stretches all credulity to believe that [her] uncorroborated statement here is true." *Id*. at 36 (emphasis omitted).

In addressing this issue, the trial court stated that video evidence demonstrating antagonism between Appellant and the victim "is not a necessary corollary in a case involving sexual assault of a family member, and [is] indeed the antithesis of such an assault as this, which relies on taking advantage of a close, familial relationship." Trial Court Opinion, 6/29/23, at 11. The court reiterated that it found credible Victim's contention that Appellant engaged in vaginal intercourse, fondled her breasts, and spit on her vagina without her consent. *Id*. at 12. It also observed that "there was additional evidence that supported this court's finding that [Victim] was

credible in her testimony that the sexual acts were not consensual," highlighting the following:

> (1) [Officer Timothy] Coffland, the first police officer to respond to [Victim]'s complaint, found [her] to be "visibly upset" and "traumatized," a reaction consistent with having been sexually assaulted[.]   (2) Deja Johnson testified that [Victim] called her after the assault as [Victim] was returning to her apartment (*i.e.*, a prompt complaint) in the early morning hours after she was free of Appellant who had followed her.  Ms. Johnson said [Victim] sounded "scared" and "very upset."  When Ms. Johnson met [Victim] at [Victim]'s apartment in the afternoon following the assault, Ms. Johnson described [Victim] as appearing broken and very lost and upset[.]  (3) After speaking with Deja Johnson in the early morning of February 3, 2020, [Victim] sent frantic text messages to her friend[,] Keys:  "Keys I need to talk please"; "This is so important"; and "Help me[."]  (4) Following the assault, when [Victim] and Appellant returned to Cachet Johnson's house, [Aaron Merlin] could tell something was wrong.  When he asked [Victim] what[ was] wrong, she signaled for him to be quiet as Appellant was in close proximity[.]  (5) Cachet Johnson testified credibly that during the three-way phone call with [Victim] and Appellant's mother on February 3, 2020[,] [Victim] sounded upset and was crying.  All these circumstances and reactions that occurred within [twenty-four] hours of the assault are consistent with [Victim]'s testimony that she had been sexually assaulted.

Trial Court Opinion, 6/29/23, at 10-11 (cleaned up).

Under these circumstances, we conclude that the trial court did not abuse its discretion in denying Appellant's weight claim.  Victim's testimony was consistent and corroborated in part by the video evidence and the testimony of her friend and family.  The video matched the locations and times Victim provided to police.  Additionally, the observations by numerous people that saw and spoke with Victim bolstered the notion that she had an altered demeanor due to being victimized.  Since the trial court's conclusions are

- 13 -

neither unreasonable nor the result of "partiality, prejudice, bias, or ill-will," we may not disturb them. ***Clay***, 64 A.3d at 1056.

Finally, Appellant argues that his lifetime registration requirement pursuant to Revised Subchapter H of SORNA is illegal, relying on the trial court opinion issued in ***Torsilieri***. ***See*** Appellant's brief at 38-45. In this vein, we note:

> When an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law. Our consideration of questions of law is plenary. A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion.

***Commonwealth v. Bueno***, 307 A.3d 1255, 1258 (Pa.Super. 2024) (cleaned up).

In his brief, Appellant essentially adopts the reasoning from the ***Torsilieri*** trial court opinion that SORNA is unconstitutional "because it creates an irrebuttable presumption that people who are forced to register are somehow considered more dangerous than those convicted of other serious crimes[,] such as aggravated assault." Appellant's brief at 42. He also relies on that opinion for the proposition that Revised Subchapter H is punitive, and thus "results in a criminal sentence in excess of the statutory maximums; offends federal and state proscriptions against cruel and unusual punishment; and breaches the separation of powers doctrine." ***Id***. at 43-44 (cleaned up). While acknowledging that this decision was not binding on the trial court in

the case *sub judice*, Appellant nonetheless contends that the holding applies equally to him because the **Torsilieri** opinion found the relevant portion of SORNA unconstitutional in general, not specifically to that defendant. **Id**. at 38-39, 44.

In rejecting this contention, the trial court noted that unlike in **Torsilieri**, where the defendant presented extensive expert evidence supporting his claims, "Appellant here did not present **any** evidence (despite being afforded an opportunity to do so) regarding his argument that SORNA is unconstitutional because it presumes recidivism." Trial Court Opinion, 6/29/23, at 13 (emphasis in original). Therefore, it determined that Appellant had not met his burden of proving the act unconstitutional.

We agree and find that this case is controlled by our recent decision in **Bueno**. There, the defendant was sentenced in 2022 for convictions of statutory sexual assault and indecent assault of a person less than sixteen years old. **Bueno**, 307 A.3d at 1257. The court designated him as a Tier II offender and ordered him to register as a sex offender pursuant to Revised Subchapter H of SORNA, though it did not find that he met the criteria for being an SVP. **Id**. The defendant filed post-sentence motions challenging the constitutionality of SORNA, relying purely on case law, including the **Torsilieri** trial court opinion. Bueno did not introduce any independent testimony or evidence supporting his contentions, despite having the opportunity to do so. The trial court denied the post-sentence motions. On appeal, this Court

- 15 -

affirmed, stating that "without any evidence of scientific studies, [Bueno] cannot make a colorable argument that the General Assembly's factual presumptions have been undermined by recent scientific studies." ***Id***. at 1262 (cleaned up). We further held that Bueno's non-SVP status did not establish that Revised Subchapter H is unconstitutional, since his "unsupported challenge does not demonstrate a consensus of scientific evidence as was present to find a presumption not universally true . . . , nor the clearest proof needed to overturn the General Assembly's statements that the provisions are not punitive." ***Id***. at 1263 (citing ***Commonwealth v. Wolf***, 276 A.3d 805 (Pa.Super. 2022)).

In all material respects, Appellant's claim here is the same as that raised in ***Bueno***. Appellant and Bueno were identically situated, as both were subject to registration requirements pursuant to SORNA, neither presented any evidence supporting their constitutional challenges despite having the chance to do so, and the trial court in the respective cases determined that neither defendant was an SVP. Accordingly, we conclude that Appellant, like the defendant in ***Bueno***, has failed to meet his high burden of proving the unconstitutionality of SORNA.

In sum, Appellant has given us no cause to disturb his judgment of sentence or the imposition of his registration requirement. Thus, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/11/2024